## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re | Chapter 11 |
| FLEETWOOD ACQUISITION CORP., *et al.*,[1] | Case No. 19-12330 (KG) |
| Debtors. | (Joint Administration Requested) |

### MOTION OF DEBTORS FOR ENTRY OF INTERIM AND FINAL ORDERS (I) AUTHORIZING THE DEBTORS' USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION AND (III) SCHEDULING A FINAL HEARING

Fleetwood Acquisition Corp. and its chapter 11 affiliates, the debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases (the "Cases"), hereby move the Court (the "Motion") for entry of interim and final orders, the interim form of which is attached hereto as **Exhibit A**, (a) authorizing the Debtors' use of cash collateral, (b) providing certain adequate protection to the Prepetition Secured Lender (as defined herein), and (c) scheduling a final hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "Final Order", and together with the Interim Order, the "Cash Collateral Orders"), pursuant to sections 105(a), 361, 363(b), 363(c)(2), and 507 of chapter 11 of title 11 of the United States Code, §§ 101–1532, as amended (the "Bankruptcy Code").  In support of this Motion, the Debtors rely upon and fully incorporate the *Declaration of Octavio Diaz, Chief Restructuring Officer of Fleetwood Acquisition Corp., et al., In Support of Debtors' Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), filed with the Court

---

[1]      The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Fleetwood Acquisition Corp. (3051), Fleetwood Industries, Inc. d/b/a Fleetwood Fixtures (7530), and High Country Millwork, Inc. (7294).  The mailing address for the Debtors, solely for purposes of notices and communications, is: 4076 Specialty Place, Longmont, Colorado 80504.

concurrently herewith. In further support of this Motion, the Debtors respectfully represent as follows:

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated as of February 29, 2012. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court would lack Article III jurisdiction to enter such final order or judgment absent the consent of the parties.

2.      Venue of these Chapter 11 Cases[2] and this Motion is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

3.      The bases for relief requested herein are sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Rules 2002, 4001, 6003, 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rule 4001-2.

## BACKGROUND

4.      On the date hereof (the "Petition Date"), each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.

5.      The Debtors are authorized to continue to operate their businesses and manage their property as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

---

[2]      All capitalized terms used but not defined herein shall have the meanings given in the First Day Declaration.

Code.  No trustee, examiner or statutory committee has been appointed in these Cases by the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee").

6.      Fleetwood Industries, Inc. (d/b/a Fleetwood Fixtures) ("Fleetwood") and High Country Millwork, Inc. ("High Country") are leading providers of customized fixtures and displays, with decades of experience serving a wide variety of customers in the retail and hospitality industries.  Fleetwood and High Country are full service fixturing companies beginning with creative and collaborative design services and continuing through the manufacturing and installation processes.

7.      The companies were consolidated under Fleetwood Acquisition Corp. in 2014 and, following certain operational and financing restructuring initiatives in the following years, the companies' performance substantially improved.  By 2018, the companies had substantially stabilized their operations and together achieved $70 million in sales.  Fleetwood invested heavily in a new manufacturing space in 2018-2019 to service its growing business and customer needs.

8.      Unfortunately, in 2019 as a result of the certain tariffs instituted against China and other headwinds in the retail industry, certain of the Debtors' customers began delaying orders, significantly extending project timelines, and slow paying certain receivables.  At the same time, the Debtors' overhead expenses increased due to the Fleetwood expansion and certain of the materials utilized by the Debtors became more expensive due to the tariffs.

9.      The combined effect of these circumstances on the Debtors' operations and balance sheet led the Debtors to look for additional financing in recent months.  After exhausting this process without locating a financing source, the Debtors determined that their best path forward was to effect an operational and financial restructuring under chapter 11 of the

Bankruptcy Code.  The Debtors intend to use these cases to streamline their operations and to prosecute a plan of reorganization that will permit the Debtors to emerge as a strong business partner for their many valued customers and suppliers.

10.    More detailed factual background regarding the Debtors and the commencement of these Cases is set forth in the First Day Declaration.

**A.  The Debtors' Prepetition Capital Structure**

11.    The Debtors[3] and Fixtures Holdings, L.P. (the "Prepetition Secured Lender") are parties to that certain Revolving Credit and Term Loan Agreement, by and among the Prepetition Secured Lender (as successor in interest to Citizens Bank of Pennsylvania) and the Debtors, dated as of September 19, 2014 (as amended, restated, or otherwise modified from time to time, the "Prepetition Credit Agreement").  Under the Prepetition Credit Agreement, the Debtors received a revolving credit facility in two tranches, a term cash loan and a term PIK loan.[4]  The Prepetition Secured Debt is secured by first-priority liens ("Prepetition Liens") on substantially all assets of Debtors Fleetwood Acquisition Corp. and High Country Millwork, Inc. (together, the "Grantor Debtors"), including the Grantor Debtors' cash collateral.  As of the Petition Date, there is at least $51,259,427.04 in principal and interest outstanding under the Prepetition Credit Agreement.  The Prepetition Secured Lender has affirmatively consented to the proposed use of its cash collateral on the condition that the relief requested herein is granted.

---

[3]    Fleetwood Acquisition Corp. is the "Borrower" under the Prepetition Credit Agreement, and each of Fleetwood Industries Inc. and High Country Millwork, Inc. are "Guarantors."

[4]    The term loan debt is 91.17% held by the Prepetition Secured Lender and 8.82% held by Brookside.  The Prepetition Secured Lender is the administrative agent under the Prepetition Credit Agreement with respect to all loans made thereunder.

12.    The Debtors[5] and Brookside Mezzanine Fund III, L.P. ("Brookside") are also parties to that certain Term Loan Agreement, by and among Brookside and the Debtors, dated as of September 19, 2014 (as amended, restated or otherwise modified from time to time, the "Brookside Mezzanine Loan").  As of the Petition Date, there is approximately $9,826,845 in principal and interest outstanding under the Brookside Mezzanine Loan.  The Brookside Mezzanine Loan is not secured by liens upon any of the Debtors' assets.

13.    The senior priority of the Prepetition Secured Debt is dictated by that certain Intercreditor Agreement, by and among the Debtors, the Prepetition Secured Lender, and Brookside, dated as of September 19, 2014 (as amended, restated, or otherwise modified from time to time, the "Intercreditor Agreement") with respect to the priority of the Prepetition Secured Debt vis-à-vis the Brookside Mezzanine Loan.

14.    Finally, Fleetwood Acquisition Corp. and the Prepetition Secured Lender (as successor in interest to Grey Mountain Partners Fund III Holdings, L.P.) are parties to that certain Amended and Restated Subordinated Promissory Note, dated as of May 30, 2017 (as amended, restated, or otherwise modified from time to time, the "Fixtures Subordinated Debt").  As of the Petition Date, there is approximately $8,756,074 in principal and interest outstanding under the Fixtures Subordinated Debt.  The Fixtures Subordinated Debt is not secured by liens upon any of the Debtors' assets.

**B.  Risk of Irreparable Harm and Need for Immediate Relief**

15.    The orderly continuation of the Debtors' efforts to preserve assets and maximize the value of their estates is largely dependent upon their ability to regularly use cash collateral,

---

[5]    Fleetwood Acquisition Corp. is the "Borrower" under the Brookside Mezzanine Loan, and each of Fleetwood Industries Inc. and High Country Millwork, Inc. are "Guarantors."

5

particularly in the early weeks of the bankruptcy. Without the liquidity provided by use of cash collateral, the Debtors' objective of maintaining the value of their assets for the benefit of their creditors will fail without a fair opportunity to achieve the purposes of the chapter 11 process. As set forth in the First Day Declaration, absent authority to use cash collateral, the Debtors, their creditors, and the estates generally will suffer irreparable harm because the Debtors would immediately cease operations, which, in turn, would cause an immediate and pronounced deterioration in the value of the Debtors' assets and recovery by the Debtors' constituents. Thus, the Debtors' access to cash collateral is absolutely necessary to preserve and maximize value for the benefit of all of the Debtors' stakeholders.

16.     Without access to liquidity, the Debtors' ability to navigate through the chapter 11 process will be jeopardized, to the detriment of all of the estates' stakeholders. As a result, the Debtors have an immediate need to use cash collateral to ensure liquidity at the outset of their chapter 11 cases.

17.     As demonstrated by the Budget, the Debtors have sufficient cash on hand or anticipated cash flow to continue to pay expenses, such as payroll, professionals and utilities, and costs associated with ongoing operations without an immediate need for additional short-term financing beyond use of cash collateral. The Budget contains categories of anticipated disbursements during the time period that the Budget covers. The Debtors believe that the Budget includes all reasonable, necessary, and foreseeable expenses to be incurred in connection with their chapter 11 cases.

18.     The following chart contains a summary of the material terms of the Interim

Order, in accordance with Bankruptcy Rule 4001(b)(1) and Local Rule 4001-2.[6]

| Material Term: | Summary Description: |
| --- | --- |
| **Parties with an Interest in Cash Collateral:**<br><br>*Bankruptcy Rule 4001(b)(1)(B)(i)* | Fixtures Holdings, L.P.<br><br>*See* Interim Order, at p. 1 |
| **Stipulations:**<br><br>*Bankruptcy Rule 4001(c)(1)(B)(iii)*<br><br>*Local Rule 4001-2(a)(i)(B)* | The Debtors make certain customary stipulations with respect to, among other things, the amounts outstanding under the Prepetition Loan Documents, and the validity, perfection, enforceability and priority of liens and security interests securing same.<br><br>*See* Interim Order, at ¶ D. |
| **Budget and Permitted Variances:**<br><br>*Bankruptcy Rule 4001(c)(1)(B)*<br><br>*Local Rule 4001-2(a)(ii)* | The use of cash collateral shall be in compliance with the Budget, a copy of which is annexed to the proposed Interim Order attached hereto as <u>Exhibit A</u>.<br><br>The Debtors are required to comply with the Budget subject to a weekly variance not to exceed 15% of the budgeted amounts of total cash disbursements for such week by category.<br><br>The Budget may be modified only with the prior written consent and approval of the Prepetition Secured Lender—in its sole discretion and without further order of the Court—or upon order of the Court as necessary.<br><br>*See* Interim Order, at ¶¶ 2, 3(a). |
| **Use of Cash Collateral:**<br><br>*Bankruptcy Rule 4001(c)(1)(B)*<br><br>*Bankruptcy Rule 4001(b)(1)(B)(ii)*<br><br>*Local Rule 4001-2(a)(ii)* | The Debtors are authorized to use Cash Collateral in accordance with the Budget, with a permitted variance described in Paragraph 3(a) of the Interim Order, and otherwise pursuant to the terms and conditions of the Interim Order.<br><br>*See* Interim Order, at ¶¶ 2, 3(a). |
| **Maturity Date and Termination:**<br><br>*Bankruptcy Rule 4001(c)(1)(B)*<br><br>*Local Rule 4001-2(a)(ii)* | The "Termination Date" is the earlier of (a) the date that is five business days following notice of a "Termination Event" that remains uncured or the Prepetition Secured Lender has not explicitly waived such Termination Event in writing; (b) January 31, 2020; and (c) the effective date of a plan of reorganization or liquidation for the Debtors. |

---

[6]     Capitalized terms used but not otherwise defined in this chart have the meanings ascribed to them in the Interim Order.  The terms and conditions set forth in this Motion are qualified in their entirety by reference to the provisions of the Interim Order.  Any summaries or descriptions in the chart are provided solely for the convenience of the Court and the parties in interest.  In the event of any inconsistency between the description of the terms of the Interim Order and the descriptions in the chart, the actual terms of the Interim Order shall govern.

| Material Term: | Summary Description: |
|---|---|
| | *See* Interim Order, at ¶ 2. |
| **Adequate Protection Lien/Superpriority Administrative Claim Status:**<br><br>*Bankruptcy Rule 4001(c)(1)(b)*<br><br>*Local Rule 4001- 2(a)(ii)* | By the Interim Order, the Grantor Debtors grant the Prepetition Secured Lender the following replacement and additional security interests and liens to the Prepetition Secured Lender, subject only to the Carve Out (as defined in the Interim Order):<br><br>    i.    Liens Senior to Other Liens.  A valid, binding, continuing, enforceable, fully perfected, first-priority senior priming security interest in, and lien on, the Prepetition Collateral and all other of the Grantor Debtors' now-owned and hereafter-acquired real and personal property, assets, and rights of any kind or nature, wherever located, including, without limitation, all prepetition and postpetition property of the Grantor Debtors' estates, and the proceeds, products, offspring, rents, and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, and, upon entry of the Final Order, all claims or causes of action or the proceeds thereof to avoid a transfer of property (or an interest in property) or an obligation incurred by the Grantor Debtors pursuant to any applicable section of the Bankruptcy Code, including, without limitation, chapter 5 and section 724(a) of the Bankruptcy Code (collectively, the "<u>Senior Adequate Protection Collateral</u>").  The Adequate Protection Liens shall in all cases be senior to any other security interests or liens, subject only to the Carve Out and valid, perfected, and enforceable Prepetition Permitted Liens, if any, senior to the Prepetition Secured Lender's liens or security interests as of the Petition Date or to valid and unavoidable liens permitted under the Prepetition Loan Documents and in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.<br><br>    ii.    Liens Junior to Existing Liens.  A valid, binding, continuing, enforceable, fully perfected junior lien on and security interest in all prepetition and postpetition property of the Grantor Debtors (other than the property described in clause (i) of this Paragraph **Error! Reference source not found.**) (the "<u>Junior Adequate Protection Collateral</u>," and together with the Senior Adequate Protection Collateral, the "<u>Adequate Protection Collateral</u>"), whether now existing or hereafter acquired, subject to valid, perfected, and unavoidable Prepetition Permitted Liens, if any, senior to the Prepetition Secured Parties' liens and security interests as of the Petition Date or valid and unavoidable liens permitted under the Prepetition Loan Documents and in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.<br><br>The Interim Order further grants the Prepetition Secured Lender, an allowed superpriority administrative expense claim against each of the Grantor Debtors to the extent that other adequate protection granted to the Prepetition Secured Lender does not adequately protect against any diminution of value of the Prepetition Secured Lender's interest in the Prepetition Collateral<br><br>*See* Interim Order, at ¶ 3 (b), (d). |

| Material Term: | Summary Description: |
|---|---|
| **Automatic Perfection of a Lien:**<br><br>*Bankruptcy Rule 4001(c)(1)(vii)* | The Interim Order provides for the automatic perfection of the "Adequate Protection Liens" granted to the Prepetition Secured Lender.<br><br>*See* Interim Order, at ¶ 3(b). |
| **Milestones:**<br><br>*Bankruptcy Rule 4001(c)(1)(B)(vi)* | A Final Order approving the Debtors' use of cash collateral and the grant of adequate protection to the Prepetition Secured Lender must be entered within 35 days of entry of the Interim Order.<br><br>*See* Interim Order, at ¶ 7(m) |
| **Events of Default:**<br><br>*Bankruptcy Rule 4001(c)(1)(B)*<br>*Local Rule 4001- 2(a)(ii)* | Usual and customary "Termination Events" in orders of this nature, including, without limitation: (i) entry of an order in excess of a materiality threshold without consent of the Prepetition Secured Lender; (ii) filing of any motion or pleading granting a lien upon the Prepetition Collateral or the Adequate Protection Collateral or materially adverse to the Prepetition Secured Lenders liens thereupon, including the filing of a challenge to their validity; (iii) proposal or confirmation of a plan without the consent or acceptance of the Prepetition Secured Lender; (iv) the allowance of a claim under section 506(c) of the Bankruptcy Code; (v) failure of the Debtors to make any payment required by the Interim Order; (vi) violation by the Debtors of the Budget or the Interim Order; (vii) if a Final Order is not entered within 35 days of entry of the Interim Order; and (viii) conversion of or appointment of a trustee or examiner in the Debtors' chapter 11 cases.<br><br>*See* Interim Order, at ¶ 7. |
| **Adequate Protection:**<br><br>*Bankruptcy Rules 4001(b)(1)(B)(iv); and 4001(c)(1)(B)(ii)* | As adequate protection for any use or diminution in the value of the Prepetition Secured Lender's interest in the Prepetition Collateral (including the Cash Collateral), the Interim Order provides the following: (a) the Debtors will comply with the Budget and shall not make any disbursements other than pursuant to the Budget, subject to applicable variances; (b) the Adequate Protection Liens, consisting of senior liens on the Senior Adequate Protection Collateral and junior liens on the Junior Adequate Protection Collateral, as detailed in the Interim Order; (c) other than as set forth in the Interim Order, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted; (d) an allowed superpriority administrative expense claim against each of the Debtors on a joint and several basis with priority over any and all other administrative expense claims against the Debtors; (e) the Debtors shall maintain their cash management arrangements in a manner consistent with the interim order granting the Cash Management; and (f) payment of certain of the reasonable professional fees, expenses, and disbursements incurred by the Prepetition Secured Lender.<br><br>*See* Interim Order, at ¶ 3. |

| Material Term: | Summary Description: |
|---|---|
| **Carve Out:**<br><br>*Bankruptcy Rule 4001(c)(1)(B)*<br><br>*Local Rule 4001-2(a)(ii)* | The Interim Order provides for a "<u>Carve-Out</u>" under which the liens on the Prepetition Collateral will be subject to the right of payment of the fees and expenses of the Debtor Professionals and the Committee Professionals and all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code.<br><br>*See* Interim Order, at ¶ 7. |
| **Disparate Treatment of Professionals Under Carve-Out**<br><br>*Local Rule 4001- 2(a)(i)(F)* | Under the terms of the Interim Order, the Carve Out shall not exceed, in an aggregate amount: (i) for the Debtor Professionals, (A) their respective Pre-Trigger-Notice Accrued Fees and (B) $50,000.00 for fees and expenses accruing after service of the Carve Out Trigger Notice; (ii) for Committee Professionals, (X) their respective Pre-Trigger-Notice Accrued Fees and (Y) $20,000.00 for fees and expenses accruing after service of the Carve Out Trigger Notice less the amount of prepetition retainers received by such Chapter 11 Professionals and not previously applied to the fees, disbursements, costs, and expenses.<br><br>*See* Interim Order, at ¶ 7. |
| **Cross-Collateralization**<br><br>*Local Rule 4001- 2(a)(i)(A)* | The Interim Order does not provide for cross-collateralization, other than the replacement liens provided as adequate protection. |
| **Modification of Automatic Stay:**<br><br>*Bankruptcy Rule 4001(c) (1)(B)(iv)* | The Interim Order provide for the modification of the automatic stay to the extent necessary to permit (a) the Debtor and the Prepetition Secured Lender to implement and perform under the Interim Order, including the creation and perfection of all Liens granted or permitted by the Interim Order, and (b) following the Termination Date and a notice period, to permit the Prepetition Secured Lender to exercise certain rights and remedies available to it under the Prepetition Loan Documents, the Interim order or applicable law.<br><br>*See* Interim Order, at ¶ 2, 8. |
| **Section 506(c) Waiver:**<br><br>*Local Rule 4001- 2(a)(i)(C)* | Upon entry of the Final Order, the Prepetition Secured Creditor is deemed to receive a waiver of the provisions of section 506(c) of the Bankruptcy Code.<br><br>*See* Interim Order, at ¶ 8(h). |
| **Waiver of Marshaling Doctrine and Equities of Case Exception:**<br><br>*Bankruptcy Rule 4001(c)(1)(B)(viii)*<br><br>*Local Rule 4001- 2(a)(i)(H)* | Upon entry of the Final Order, the Prepetition Secured Creditor is deemed to receive a waiver of  (a) the equitable doctrine of "marshaling" or any other similar doctrine with respect to the Adequate Protection Collateral, (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral<br><br>*See* Interim Order, at ¶ 8(h). |
| **Nonconsensual Priming Liens**<br><br>*Local Rule 4001- 2(a)(i)(G)* | -None- |

| Material Term: | Summary Description: |
|---|---|
| **Lien on Avoidance Actions:**<br><br>*Bankruptcy Rule 4001(c)(1)(B)(xi)*<br><br>*Local Rule 4001- 2(a)(i)(D)* | The Interim Order grants the Prepetition Secured Lender a replacement lien on, among other things, the Avoidance Actions, and provides that the administrative expense claim granted to the Prepetition Secured Lender shall have recourse to and be payable from all prepetition and postpetition property of the Debtors including, without limitation, the proceeds or property recovered in respect of any Avoidance Actions.<br><br>*See* Interim Order, at ¶ 3(d). |
| **Provisions Deeming Prepetition Debt to be Post-Petition Debt:**<br><br>*Local Rule 4001- 2(a)(i)(E)* | -None- |
| **Release ,Waiver or Limitation of any Estate Claim:**<br><br>*Bankruptcy Rule 4001(c)(1)(viii)* | The Interim Order provides that the Debtors, on their own behalf and on behalf of their estates and any successors or assigns (including any chapter 7 or chapter 11 trustee or other representative appointed in any of these chapter 11 cases), hereby unconditionally, irrevocably, and fully, forever waive, release, and discharge the Prepetition Secured Lender, and all of their respective affiliates, and all of the directors, officers, employees, attorneys, representatives, agents, predecessors, successors, and assigns of the Prepetition Secured Lender and such affiliates (collectively, the "Released Parties") from any and all claims, counterclaims, defenses, setoff rights, demands, actions, or causes of action (whether known or unknown, asserted or unasserted, accrued or unaccrued, or fixed or contingent) arising out of or in any way relating to any of the Prepetition Loan Documents, the Prepetition Secured Debt, and the Prepetition Collateral to the extent arising on or prior to the date hereof<br><br>*See* Interim Order, at ¶ E. |
| **Indemnification:**<br><br>*Bankruptcy Rule 4001(c)(1)(B)(ix)* | -None- |

## **RELIEF REQUESTED**

19.    Pursuant to sections 105, 361, 362, 363, and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6003, 6004, and 9014, and Local Rule 4001-2, the Debtors request the entry of an Interim Order substantially in the form attached hereto (a) authorizing the Debtors' use of cash collateral, (b) approving the adequate protection to the Prepetition Secured Lender, and (c) scheduling a final hearing to consider entry of an order granting the relief requested in the Motion on a final basis.

## I.     Debtors' Use of Cash Collateral

20.     Section 363 of the Bankruptcy Code governs the Debtors' use of cash collateral.[7] Under section 363(c)(2), a debtor may not use cash collateral unless "(A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes the use, sale or lease in accordance with the provisions of this section."

21.     Here, the Prepetition Secured Lender consents to the Debtors' use of the Cash Collateral in exchange for the adequate protection described herein. The Prepetition Secured Lender understands that the Debtors' ability to continue their asset preservation efforts and to administer these chapter 11 cases in an orderly manner is dependent on their ability to fund the postpetition expenses set forth in the Budget. Use of the Cash Collateral is essential to the Debtors' ability to pay their expenses.

## II.     The Proposed Adequate Protection

22.     A debtor's authority to use cash collateral is typically conditioned on providing "adequate protection" to entities that assert an interest in such cash. 11 U.S.C. § 363(e). "The concept of 'adequate protection' is not defined in the [Bankruptcy] Code except by the implications of the examples of adequate protection listed in § 361." *In re Beker Indus. Corp*, 58

---

[7]  Section 363(a) defines "cash collateral" as follows:

> [C]ash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the proceeds, products, offspring, rents, or profits of property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

11 U.S.C. § 363(a).

12

B.R. 725, 736 (Bankr. S.D.N.Y. 1986). Section 361 of the Bankruptcy Code contains a nonexhaustive list of acceptable forms of adequate protection. *See* 11 U.S.C. § 361.

23.    The principal purpose of adequate protection "is to assure that the lender's economic position is not worsened because of the bankruptcy case." *In re DeSardi*, 340 B.R. 790, 804 (Bankr. S.D. Tex. 2006). A secured creditor is "not entitled to adequate protection payments without a showing of economic depreciation." *In re Immenhausen Corp.*, 164 B.R. 347, 352 (Bankr. M.D. Fla. 1994) (citing *United Savings Ass'n v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 369-73 (1988)). The interest in property that is entitled to protection is value of the collateral securing such claim. *Id.* It follows therefore that where a secured creditor's interest and the value of the collateral is not diminishing by its use, sale or lease, the secured creditor's interest is adequately protected. *Id.*

24.    The Bankruptcy Code does not explicitly define adequate protection, but does provide a non-exclusive list of the means by which a debtor may provide adequate protection, including other relief resulting in the indubitable equivalent of the secured creditor's interest in such property. *See* 11 U.S.C. § 361. Because the term "adequate protection" is not defined in the Bankruptcy Code, the precise contours of the concept are necessarily determined on a case-by-case basis. *See*, *e.g.*, *In re Swedeland Dev. Grp. Inc.*, 16 F.3d 552, 564 (3d Cir. 1994) (citing *In re O'Connor*, 808 F.2d 1393, 1396–97 (10th Cir. 1987)); *In re Martin*, 761 F.2d 472, 474 (8th Cir. 1995) (same); *In re Senior Care Props., Inc.*, 137 B.R. 527, 528 (Bankr. N.D. Fla. 1992) (same); *In re Family Place P'ship*, 95 B.R. 166, 171 (Bankr. E.D. Cal. 1989); *In re Mellor*, 734 F.2d 1396, 1400 (9th Cir. 1984); *see also* S. Rep. No. 95-989, 95th Cong., 2d Sess. 54 (1978) and H.R. Rep. No. 595, 95th Cong., 2d Sess. 339 (1978) (acknowledging that the statute confers

upon "the parties and the courts flexibility by allowing such other relief as will result in the realization by the protected entity of the value of its interest in the property involved.").

25.    Preserving the value of the collateral against the decline in value that would result from a precipitous liquidation is a crucial factor to consider in making an adequate protection determination. *In re Snowshoe Co. Inc.*, 789 F.2d 1085, 87 (4th Cir. 1986) (affirming 364(d) financing order where trustee reported that the collateral would lose from 50% to 90% of its value if operations ceased); *In re Ralar Distribs., Inc.*, 166 B.R. 3, 6 (Bankr. D. Mass. 1994), *aff'd* 182 B.R. 81 (D. Mass.), *aff'd* 69 F.3d 1200 (1st Cir. 1995).

26.    In these chapter 11 cases, the Prepetition Secured Lender is adequately protected because without the Debtors' use of the cash collateral, it is extremely unlikely that the Debtors can remain in business and successfully reorganize.  Moreover, the Prepetition Secured Lender has consented to the use of cash collateral and agreed to the following adequate protection of its interests in such collateral: a) the Debtors will comply with the Budget and shall not make any disbursements other than pursuant to the Budget, subject to applicable variances; (b) the Adequate Protection Liens, consisting of senior liens on the Senior Adequate Protection Collateral and junior liens on the Junior Adequate Protection Collateral, as detailed in the Interim Order; (c) other than as set forth in the Interim Order, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted; (d) an allowed superpriority administrative-expense claim against each of the Debtors on a joint and several basis with priority over any and all other administrative-expense claims against the Debtors, to the extent the other adequate protection granted to the Prepetition Secured Lender does not adequately protect against diminution of value; (e) the Debtors shall maintain their cash management arrangements in a manner consistent with the interim order granting the Cash

14

Management; and (f) payment of certain of the reasonable professional fees, expenses, and disbursements incurred by the Prepetition Secured Lender.  *See* Interim Order, at ¶ 7.

27.    The Debtors submit that the adequate protection provided for in the Interim Order attached hereto as is fair and reasonable under the circumstances, satisfies the requirements of sections 363(c)(2) and 363(e) of the Bankruptcy Code, and is in the best interest of the Debtors, their estates, and all parties in interest.  That the proposed adequate protection package is sufficient under the circumstances of these cases is evidenced by the fact that the Prepetition Secured Lender has consented to the use of its cash collateral on such terms.

28.    Based on the foregoing, the Debtors respectfully submit that entry of an Order authorizing the interim use of cash collateral and scheduling a Final Hearing to approve the use of cash collateral on a final basis is necessary and appropriate.

## REQUEST FOR FINAL HEARING

29.    Pursuant to Bankruptcy Rule 4001(b)(2) and Local Rule 4001-2(c), the Debtors request that the Court set a date for the Final Hearing and fix the date and time prior to the Final Hearing for parties to file objections to the relief requested by this Motion.

## IMMEDIATE RELIEF IS NECESSARY TO AVOID
## IMMEDIATE AND IRREPARABLE HARM

30.    Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm." Fed. R. Bankr. P. 6003.  The Debtors submit that for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors.

31.    Thus, the Debtors request that the Court conduct an expedited preliminary hearing on the Motion and authorize the Debtors to use cash collateral of the Prepetition Secured Lender,

to (i) finance the chapter 11 cases in accordance with the Budget, and (ii) avoid immediate and irreparable harm and prejudice to the Debtors' estate and all parties in interest.

32.     Absent authorization from the Court to use any such cash collateral on an interim emergency basis, the Debtors will be immediately and irreparably harmed. As set forth above, the Debtors' ability to use such Cash Collateral is critical to its ability to preserve value and administer these chapter 11 cases. Moreover, the Prepetition Secured Lender consents to the Debtors' request to use the cash collateral in accordance with the Budget in exchange for the adequate protections set forth herein.

33.     Without immediate liquidity provided by the use of such cash collateral, the Debtors will simply be unable to orderly preserve assets in administration of their chapter 11 cases, will be unable to pay basic expenses, such as payroll, professionals, and utilities, and will suffer a precipitous loss of value to the detriment of all parties in interest.   Serious and irreparable harm to the Debtors and their estates would occur with disastrous consequences for the Debtors, their estates, and their creditors. The Interim Order seeks approval to use such Cash Collateral only in the amount necessary to sustain the Debtors' operations and administer these chapter 11 cases.

## NOTICE

34.     The Debtors will provide notice of this Motion to: (i) the U.S. Trustee; (ii) holders of the 30 largest unsecured claims on a consolidated basis against the Debtors; (iii) counsel to Fixture Holdings, L.P., in its capacity as administrative agent and lender under the Debtors' senior secured credit facilities; (vi) Brookside; and (v) all parties who, as of the filing of this Motion, have filed a notice of appearance and request for service of papers pursuant to Bankruptcy Rule 2002.   In light of the nature of the relief requested herein, the Debtors

16

respectfully submit that no further notice of this Motion is required.  The Debtors submit that, under the circumstances, no other or further notice need be given.

## <u>CONCLUSION</u>

The Debtors respectfully request that this Court enter an order, substantially in the form attached hereto as **<u>Exhibit A</u>**, authorizing the Debtors' interim and final use of cash collateral and granting such other and further relief as the Court deems just and proper.

Dated:    November 4, 2019

BAYARD, P.A.

*/s/ Erin R. Fay*
Erin R. Fay (No. 5268)
Evan T. Miller (No. 5126)
Daniel N. Brogan (No. 5723)
600 North King Street, Suite 400
Wilmington, Delaware 19801
Telephone: (302) 655-5000
Facsimile: (302) 658-6395
Email:  efay@bayardlaw.com
          emiller@bayardlaw.com
          dbrogan@bayardlaw.com

*Proposed Counsel for the Debtors*

**Exhibit A**

**(Interim Order)**

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Fleetwood Acquisition Corp., et al. | Case No. 19-12330 (KG) |
| Debtors.[1] | **Re: Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING USE**
**OF CASH COLLATERAL, (II) GRANTING ADEQUATE**
**PROTECTION, AND (III) GRANTING RELATED RELIEF**

Upon consideration of the Motion,[2] the above-captioned debtors and debtors-in-possession

(collectively, the "Debtors") requesting this Court's authorization to use the cash collateral of

Fixtures Holdings, L.P. (in its capacity as lender and administrative agent under the

Prepetition Loan Documents, the "Prepetition Secured Lender"), pursuant to section 105, 361,

362, 363(c)(2), and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2,

on an interim basis and pending a final hearing on the Motion pursuant to the budget attached to

this order (this "Order") as **Exhibit 1** (as modified, and together with any subsequent budget, in

each case as approved by the Prepetition Secured Lender pursuant to Paragraph 3(a) of this Order,

the "Budget"); and notice of the Motion being adequate and appropriate under the particular

circumstances; and a hearing  having been held to consider the relief requested in the Motion; and

upon consideration of the First Day Declaration, the record of the hearing and all proceedings had

before the Court; and the Court having found and determined that (a) the relief sought in the

Motion is in the best interests of the Debtors' estates, its creditors, and other parties in interest,

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Fleetwood Acquisition Corp. (3051), Fleetwood Industries, Inc. d/b/a Fleetwood Fixtures (7530), and High Country Millwork, Inc. (7294).  The mailing address for the Debtors, solely for purposes of notices and communications, is: 4076 Specialty Place, Longmont, Colorado 80504.

[2]   Capitalized terms not otherwise defined herein shall have the meaning ascribed to them in the Motion.

(b) the interim relief requested in the Motion is necessary to avoid immediate and irreparable harm, and (c) the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT:**

A.      On November 4, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code.  The Debtors are administering these chapter 11 cases as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.      The Court has jurisdiction over the Debtors' chapter 11 cases and this proceeding under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2), and the Court may enter an order consistent with Article III of the United States Constitution.  Venue over this Motion is proper under 28 U.S.C. §§ 1408 and 1409(a).

C.      No Committee has been appointed in these chapter 11 cases.

D.      The Debtors admit, stipulate, and agree that as of the Petition Date:

> i.      the Debtors are truly and justly indebted and liable to the Prepetition Secured Lender pursuant to that certain Revolving Credit and Term Loan Agreement, by and among the Prepetition Secured Lender and the Debtors, dated as of September 19, 2014 (as amended, restated, or otherwise modified from time to time, the "Prepetition Credit Agreement," and together with all other documentation executed in connection therewith, including, without limitation, the Prepetition Collateral Agreements and the Intercreditor Agreement (each as defined below), the "Prepetition Loan Documents");

> ii.      there is at least $51,259,427.04 in principal and interest outstanding (together with any unpaid principal, interest, fees, charges, expenses, and disbursements (including attorneys' fees and related expenses and disbursements)

2

and other obligations owed to the Prepetition Secured Lender, whether contingent, whenever arising, accrued, accruing, due, owing, or chargeable, including all "Obligations" as defined and described in the Prepetition Credit Agreement, collectively, the "<u>Prepetition Secured Debt</u>") under the Prepetition Credit Agreement due and owing to the Prepetition Secured Lender;

iii.     the Prepetition Secured Debt is secured with valid, binding, enforceable, non-avoidable, properly perfected, first-priority liens ("<u>Prepetition Liens</u>") on substantially all assets of Debtors Fleetwood Acquisition Corp. and High Country Millwork (together, the "<u>Grantor Debtors</u>") (such assets, collectively, the "<u>Prepetition Collateral</u>") pursuant to that certain Security Agreement, that certain Pledge Agreement, and that certain Patent, Trademark and Copyright Security Agreement, each by and among the Prepetition Secured Lender (as successor to Citizens Bank of Pennsylvania) and the Debtors, and each dated as of September 19, 2014 (as amended, restated, or otherwise modified from time to time, collectively, the "<u>Prepetition Collateral Agreements</u>");

iv.     the Prepetition Liens have priority over any and all other liens on the Prepetition Collateral, subject only to certain other liens otherwise explicitly permitted by the Prepetition Loan Documents (to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable, and senior in priority to the Prepetition Liens as of the Petition Date, the "<u>Prepetition Permitted Liens</u>"), and otherwise have priority over any and all other liens on the Prepetition Collateral;

v.     the senior priority of the Prepetition Secured Debt is dictated by that certain Intercreditor Agreement, by and among the Debtors, the Prepetition Secured Lender (as successor in interest to Citizens Bank of Pennsylvania), and Brookside Mezzanine Fund III, L.P. ("<u>Brookside</u>"), dated as of September 19, 2014 (as amended, restated, or otherwise modified from time to time, collectively, the "<u>Intercreditor Agreement</u>"), with respect to the priority of the Prepetition Secured Debt vis-à-vis the Debtors' mezzanine debt held by Brookside;

vi.     no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Secured Debt exist, and no portion of the Prepetition Liens or the Prepetition Secured Debt is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

vii.     the Debtors and their estates have no claims, objections, challenges, causes of action, or choses in action, including with limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against the Prepetition Secured Lender or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees arising out of, based upon, or related to the Prepetition Loan Documents;

3

viii.     all cash and cash equivalents of the Grantor Debtors constitute Prepetition Collateral or proceeds thereof and are "cash collateral" of the Prepetition Secured Lender within the meaning of section 363(a) of the Bankruptcy Code (the "Cash Collateral"); and

ix.     the Debtors are in default under the Prepetition Loan Documents, which default is continuing and is with respect to material obligations of the Debtors thereunder.

E.     Subject only to Paragraph 8(e) of this Order, the Debtors, on their own behalf and on behalf of their estates and any successors or assigns (including any chapter 7 or chapter 11 trustee or other representative appointed in any of these chapter 11 cases), hereby unconditionally, irrevocably, and fully, forever waive, release, and discharge the Prepetition Secured Lender, and all of their respective affiliates, and all of the directors, officers, employees, attorneys, representatives, agents, predecessors, successors, and assigns of the Prepetition Secured Lender and such affiliates (collectively, the "Released Parties") from any and all claims, counterclaims, defenses, setoff rights, demands, actions, or causes of action (whether known or unknown, asserted or unasserted, accrued or unaccrued, or fixed or contingent) arising out of or in any way relating to any of the Prepetition Loan Documents, the Prepetition Secured Debt, and the Prepetition Collateral to the extent arising on or prior to the date hereof, including, but not limited to, claims or challenges under section 105 or chapter 5 of the Bankruptcy Code or similar provisions of applicable state or federal law, any so-called "lender liability," recharacterization, subordination, avoidance, and any other claims or causes of action regarding the validity, priority, perfection, or avoidability of liens or claims of the Prepetition Secured Lender.

F.     The Prepetition Secured Lender is entitled to adequate protection as set forth herein pursuant to sections 361 and 363 of the Bankruptcy Code for any decrease in the value of its interests in the Prepetition Collateral from and after the Petition Date.

4

G.      Subject to the terms and conditions set forth in this Order, the Prepetition Secured Lender agrees to consent to the entry of this Order.  No finding of fact contained in this Order shall or shall be construed to waive, impair, limit, or prejudice in any way the Prepetition Secured Lender's right to contest or object to any further or other use by the Debtors of the Cash Collateral or other assets of the Debtors.

H.      The terms of this Order and the use of Cash Collateral have been negotiated extensively at arm's length and in good faith between the Debtors and the Prepetition Secured Lender.

I.      Under the circumstances of this Case, this Order is a fair and reasonable response to Debtors' request for the Prepetition Secured Lender's consent to the use of Cash Collateral, and the entry of this Order is in the best interest of Debtors' estate and its creditors.  The Debtors have an immediate and critical need to use the Cash Collateral on the terms set forth herein in order for the Debtors to continue their efforts to preserve and maximize value for their estates and creditors.

J.      The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2).  Unless the interim relief set forth in this Order is granted immediately, the Debtors' estates and business will be immediately and irreparably harmed.  In particular, the Debtors require immediate use of the Cash Collateral to, among other things, pay basic expenses, such as payroll, professionals, and utilities.  The use of the Cash Collateral, in accordance with this Order, is therefore in the best interest of the Debtors' estates, their creditors, and all parties in interest.

K.      The notice provided by the Debtors of the Motion, the hearing on the Motion, and the entry of this Order satisfies the requirements of Bankruptcy Rules 2002, 4001(b) and (d),

and 9014, Local Rule 9013-1(m), and sections 102(1) and 363 of the Bankruptcy Code and was otherwise sufficient and appropriate under the circumstances.

L.    This Order constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and will take effect and be fully enforceable as of the Petition Date.

**IT IS HEREBY ORDERED THAT:**

1.    The Motion is hereby granted on an interim basis, subject to the terms and conditions set forth in this Order.

2.    The Debtors are authorized to use Cash Collateral in accordance with the Budget, with a permitted variance described in Paragraph 3(a) of this Order, and otherwise pursuant to the terms and conditions of this Order, through the earlier to occur of such dates (the "Termination Date"):  (a) the date that is five business days following receipt (via email, facsimile, or courier) by the Debtors, Debtors' counsel, the Office of the United States Trustee, and counsel to any official committee appointed in the case of a notice of the continuing occurrence of a "Termination Event" (as defined in Paragraph 6 of this Order) and that the Debtors' use of Cash Collateral shall terminate immediately pursuant to this Order, and such Termination Event remains uncured, or the Prepetition Secured Lender has not explicitly waived such Termination Event in writing; (b) January 31, 2020 (or such later date as agreed to in writing by the Prepetition Secured Lender); and (c) the effective date of a plan of reorganization or liquidation for the Debtors.  On the Termination Date, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 105 or 362 of the Bankruptcy Code or otherwise, the Prepetition Secured Lender may exercise any rights and remedies available to it under the Prepetition Loan Documents, this Order, or applicable law against the Prepetition Collateral, any

other assets of the Debtors, and the Adequate Protection Collateral (as defined below), including entering onto the premises of the Debtors in connection with an orderly liquidation of such collateral and exercising any rights and remedies provided to the Prepetition Secured Lender under the Prepetition Loan Documents, or at law or equity, in each case only except as expressly prohibited by this Court; *provided, however*, that (x) the obligations of the Debtors and the rights of the Prepetition Secured Lender with respect to all transactions that have occurred prior to the Termination Date shall remain unimpaired and unaffected and (y) the Debtors and the Prepetition Secured Lender shall retain all of their respective rights and remedies under the Bankruptcy Code except as otherwise explicitly provided in this Paragraph 2 or elsewhere in this Order.

3.       As adequate protection for any use or diminution in the value of the Prepetition Secured Lender's interest in the Prepetition Collateral (including the Cash Collateral):

(a)       The Debtors (i) will comply with the Budget and shall not make any disbursements other than pursuant to the Budget, subject to a weekly variance not to exceed 15% of the budgeted amounts of total cash disbursements for such week by category (including, but not limited to, the payment of fees or reimbursement of expenses to Debtor professionals and, if any, Committee professionals) and in the aggregate; and (ii) will deliver to the Prepetition Secured Lender, on the first business day of each week, a weekly variance report setting forth Budget-to-actual comparisons for the immediately prior week. The Budget may be modified only with the prior written consent and approval of the Prepetition Secured Lender—in its sole discretion and without further order of the Court— or upon order of the Court as necessary. Each modified budget shall be filed with the Court. The Debtors shall comply with all reporting requirements set forth in the Prepetition Loan Documents and shall provide such other reports and information as the Prepetition Secured Lender may reasonably request.

(b)       Effective as of the Petition Date and in each case perfected without the necessity of any recordation or other filing, or the execution by the Debtors, of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the Grantor Debtors hereby grant the following replacement and additional security interests and liens to the Prepetition Secured Lender, subject only to the Carve Out (as defined herein) (all such liens and security interests, the "Adequate Protection Liens"):

i.      **Liens Senior to Other Liens**.  A valid, binding, continuing, enforceable, fully perfected, first-priority senior priming security interest in, and lien on, the Prepetition Collateral and all other of the Grantor Debtors' now-owned and hereafter-acquired real and personal property, assets, and rights of any kind or nature, wherever located, including, without limitation, all prepetition and postpetition property of the Grantor Debtors' estates, and the proceeds, products, offspring, rents, and profits thereof, whether arising from section 552(b) of the Bankruptcy Code or otherwise, and, upon entry of the Final Order, all claims or causes of action or the proceeds thereof to avoid a transfer of property (or an interest in property) or an obligation incurred by the Grantor Debtors pursuant to any applicable section of the Bankruptcy Code, including, without limitation, chapter 5 and section 724(a) of the Bankruptcy Code (collectively, the "Senior Adequate Protection Collateral").  The Adequate Protection Liens shall in all cases be senior to any other security interests or liens, subject only to the Carve Out and valid, perfected, and enforceable Prepetition Permitted Liens, if any, senior to the Prepetition Secured Lender's liens or security interests as of the Petition Date or to valid and unavoidable liens permitted under the Prepetition Loan Documents and in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

ii.     **Liens Junior to Existing Liens**.  A valid, binding, continuing, enforceable, fully perfected junior lien on and security interest in all prepetition and postpetition property of the Grantor Debtors (other than the property described in clause (i) of this Paragraph 3(b)) (the "Junior Adequate Protection Collateral," and together with the Senior Adequate Protection Collateral, the "Adequate Protection Collateral"), whether now existing or hereafter acquired, subject to valid, perfected, and unavoidable Prepetition Permitted Liens, if any, senior to the Prepetition Secured Parties' liens and security interests as of the Petition Date or valid and unavoidable liens permitted under the Prepetition Loan Documents and in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(c)     Other than as set forth in this Order, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in any of the Grantor Debtors' chapter 11 cases or any case of a Grantor Debtor under chapter 7 of the Bankruptcy Code upon the conversion of such Grantor Debtor's chapter 11 case (each, a "Successor Case").  The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in any of these chapter 11 cases or any Successor Case, upon the conversion of a Grantor Debtors' chapter 11 case to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon dismissal of any of the Grantor Debtors' chapter 11 cases or any Successor Case.

(d)     The Grantor Debtors hereby grant to the Prepetition Secured Lender, an allowed superpriority administrative-expense claim against each of the Debtors on a joint and several basis with priority over any and all other administrative-expense claims against

8

the Debtors now existing or hereafter arising in these chapter 11 cases or any Successor Case (subject only to the Carve Out (as defined below)), including all claims of the kind specified under sections 503(b) and 507(b) of the Bankruptcy Code (the "Adequate Protection Claims"), to the extent that other adequate protection granted to the Prepetition Secured Lender does not adequately protect against any diminution of value of the Prepetition Secured Lender's interest in the Prepetition Collateral; and such administrative-expense claim shall have recourse to and be payable from all prepetition and postpetition property of the Grantor Debtors including, without limitation, the proceeds or property recovered in respect of any avoidance actions.

(e)    The Debtors shall maintain their cash-management arrangements in a manner consistent with the interim order granting the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Continued Use of Cash Management System, (II) Authorizing Continued Use of Existing Business Forms, (III) Authorizing the Continuation of Intercompany Transactions, (IV) Granting Administrative Priority Status to Post-Petition Intercompany Transactions, (V) Authorizing Use of Prepetition Bank Accounts and Certain Payment Methods, and (VI) Temporarily Suspending the Requirements of 11 U.S.C. § 345(b)* (the "Cash Management Motion"), entered or to be entered substantially contemporaneously herewith. The Debtors shall not use, sell, or lease outside the ordinary course of business, or grant a lien on, any of their assets outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, except as permitted by this Order, the Final Order, or any of the Debtors' "first-day" orders, without the prior written consent of the Prepetition Secured Lender. The Debtors shall comply with the covenants contained in the Prepetition Loan Documents regarding the maintenance and insurance of the Prepetition Collateral. The Debtors shall provide draft copies of all motions, applications, and other documents material to the Prepetition Secured Lender or its rights or interests, the Prepetition Collateral, or the Adequate Protection Collateral that any Debtor intends to file with the Court to the Prepetition Secured Lender's counsel at least two business days before the date when the applicable Debtor intends to file such motion, application, or other documents.

(f)    The Debtors shall also pay indefeasibly in cash the following: (i) as soon as is reasonably practicable, the reasonable professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and other consultants, including financial consultants and auditors) incurred by the Prepetition Secured Lender pursuant to the Prepetition Loan Documents arising prior to the Petition Date; and (ii) the reasonable and documented professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and other advisors) incurred by the Prepetition Secured Lender under the Prepetition Loan Documents arising subsequent to the Petition Date; *provided* that the payment of such fees, expenses, and disbursements (including, without limitation, professional fees and expenses of Paul Hastings LLP and any other professionals or advisors retained by or on behalf of the Prepetition Secured Lender) shall be made on, or as soon as reasonably practicable after, the date that is five business days after the receipt by the Debtors and the United States Trustee (the "Review Period") of invoices thereof (the "Invoiced Fees") (subject in all respects to applicable privilege or work-product

doctrines) and without the necessity of filing formal fee applications; *provided*, *however*, that the Debtors and the United States Trustee may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, the Debtors or the United States Trustee file with the Court a motion or other pleading (a "Disputed Fees Motion"), on at least five days' prior written notice to the Prepetition Secured Lender of any hearing on the Disputed Fees Motion, setting forth in detail the specific objections to the Disputed Invoiced Fees.  In the event either the U.S. Trustee or the Debtors file a Disputed Fees Motion, the applicable Disputed Invoiced Fees shall not be paid until resolution of such objection by this Court; *provided, however*, that in the event such resolution does not occur before the date that is 30 days after the filing of any such Disputed Invoice Motion, the Debtors shall pay in full the Disputed Invoiced Fees as soon as is reasonably practicable, with the objecting parties' rights to object to such Disputed Invoiced Fees preserved pending resolution of such objection.  If no Disputed Fees Motion is filed during the Review Period, the Debtors shall pay the applicable Invoiced Fees without the need for any formal application and without further order of the Court within three business days following the expiration of the Review Period and shall not be subject to any further review or challenge.  Claims against the Debtors arising from any nonpayment of amounts required to be paid under this Paragraph 3(f) shall constitute Adequate Protection Claims.

4.      The Prepetition Secured Lender reserves the right to file with the Court a motion to seek additional adequate protection of its interests in any Debtor assets.

5.      In connection with the sale or other disposition, whether under Bankruptcy Code section 363 or section 1129 or otherwise, of all or any portion of the Prepetition Collateral or Adequate Protection Collateral in which the Prepetition Secured Lender has an interest, pursuant to section 363(k) of the Bankruptcy Code, the Prepetition Secured Lender shall have the right to use the Prepetition Secured Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Prepetition Collateral.

6.      For purposes of this Order, an "Termination Event" shall mean:

(a)      the entry by this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the Prepetition Secured Lender with respect to the Prepetition Collateral having a value of more than $20,000 in the aggregate without the prior written consent of the Prepetition Secured Lender, which consent may be withheld in its sole discretion;

(b)      the filing of any motion or pleading:  (i) to obtain financing under section 364(c) or (d) of the Bankruptcy Code; (ii) to grant any lien other than as permitted under

10

the Prepetition Loan Documents upon or affecting any Prepetition Collateral or Adequate Protection Collateral; (iii) except as explicitly provided herein, to use Cash Collateral under section 363(c) of the Bankruptcy Code without the prior written consent of the Prepetition Secured Lender; (iv) that seeks to prohibit the Prepetition Secured Lender from credit bidding on any or all of the Debtors' assets during the pendency of these chapter 11 cases; or (v) requesting any relief materially adverse to the Prepetition Secured Lender or its rights and remedies hereunder or its interest in any Prepetition Collateral or Adequate Protection Collateral;

(c)     the (i) filing of any plan of reorganization or liquidation or disclosure statement attendant thereto, or any direct or indirect amendment to such plan or disclosure statement, to which the Prepetition Secured Lender does not consent or otherwise agree, in its sole discretion, to the treatment of its claims, (ii) entry of any order terminating the Debtors' exclusive right to file a plan of reorganization or liquidation, or (iii) expiration of the Debtors' exclusive right to file a plan of reorganization or liquidation;

(d)     the entry of an order in any of these chapter 11 cases confirming a plan of reorganization or liquidation that (i) is not acceptable to the Prepetition Secured Lender in its sole discretion or (ii) does not contain a provision for irrevocable repayment in full in cash of all of the Prepetition Secured Debt on or before the effective date of such plan;

(e)     the allowance of any claim or claims under section 506(c) of the Bankruptcy Code or otherwise against the Prepetition Secured Lender or any of the Prepetition Collateral or Adequate Protection Collateral;

(f)     the failure by the Debtors to make any payment required pursuant to this Order when due;

(g)     (i) the failure by the Debtors to deliver to the Prepetition Secured Lender any of the documents or other information required to be delivered pursuant to this Order when due or (ii) any such documents or other information contains a material misrepresentation;

(h)     the failure by the Debtors to adhere to the Budget except, in each instance, with respect to variances permitted pursuant to Paragraph 3(a) of this Order, in each case without the written consent of the Prepetition Secured Lender;

(i)     the filing by any Debtor, or any other party except as explicitly permitted pursuant to Paragraph 8(e) of this Order, of any motion, pleading, application, or adversary proceeding challenging the validity, enforceability, perfection, or priority of the liens securing the Prepetition Secured Debt or asserting any other cause of action against and/or with respect to the Prepetition Secured Debt, the Prepetition Collateral securing the Prepetition Secured Debt, or the Prepetition Secured Lender, including payments made on account of the Prepetition Secured Debt (or if the Debtors support any such motion, pleading, application, or adversary proceeding commenced by any third party);

(j)     the entry of an order, or filing of a motion by any of the Debtors seeking entry of an order, reversing, staying, vacating or otherwise modifying in any material respect the terms of this Order, any Prepetition Loan Documents, or any order approving the relief requested

11

in the Cash Management Motion, in each case without the written consent of the Prepetition Secured Lender;

        (k)     the entry of an order avoiding, disgorging, or requiring repayment of any portion of payments made by the Debtors to the Prepetition Secured Lender pursuant to this Order or otherwise;

        (l)     the entry of an order in any of these chapter 11 cases granting any other superpriority administrative claim or lien equal or superior to that of the Prepetition Secured Lender without the prior written consent of the Prepetition Secured Lender;

        (m)     the Court has not entered the Final Order, in a form acceptable to the Prepetition Secured Lender, on or before date that is 35 days following entry of this Order, unless an extension is otherwise agreed to in writing by the Prepetition Secured Lender;

        (n)     the violation by any Debtor of the terms of this Order;

        (o)     any material damage to or loss of the Debtors' assets or any disruption of material business of the Debtors;

        (p)     the entry of an order, or filing of a motion by any of the Debtors seeking entry of an order, converting any of the Debtors' chapter 11 cases to a case under chapter 7 of the Bankruptcy Code or terminating the authority of any Debtor to operate its business; or

        (q)     the appointment of a trustee or examiner in any of the Debtors' chapter 11 cases.

       7.     <u>Carve Out</u>.

        (a)     Notwithstanding anything to the contrary, the liens on the Prepetition Collateral will be subject to the right of payment of the following expenses (collectively, the "<u>Carve Out</u>"):

        i.     to the extent allowed at any time by the Court, but subject in all respects to the aggregate amounts set forth in the current Budget attached hereto, all accrued and unpaid fees, disbursements, costs, and expenses incurred by professionals or professional firms retained by the Debtor (the "<u>Debtor Professionals</u>") or retained by a Committee (as defined in the Motion), if any (the "<u>Committee Professionals</u>," and together with the Debtor Professionals, collectively, the "<u>Chapter 11 Professionals</u>"), through the date of service by the Prepetition Secured Lender, of a written notice delivered by the Prepetition Secured Lender to the Debtor, its counsel, the United States Trustee, and lead counsel to any Committee, which notice may be delivered at any time following the occurrence of any Termination Event (the "<u>Carve Out Trigger Notice</u>"), up to the date of service of the Carve Out Trigger Notice and as limited by the amounts for each Chapter 11

Professional as set forth in the Budget, *less* the amount of prepetition retainers received by such Chapter 11 Professionals and not previously applied to fees and expenses (the "Pre-Trigger-Notice Accrued Fees"); and

ii.      all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate.

(b)      Carve Out Terms.  The Carve Out shall not exceed, in an aggregate amount:

(i) for the Debtor Professionals, (A) their respective Pre-Trigger-Notice Accrued Fees and (B) $50,000.00 for fees and expenses accruing after service of the Carve Out Trigger Notice; (ii) for Committee Professionals, (X) their respective Pre-Trigger-Notice Accrued Fees and (Y) $20,000.00 for fees and expenses accruing after service of the Carve Out Trigger Notice (the aggregate of (b)(i) and (b)(ii) being defined as the "Carve Out Cap") less the amount of prepetition retainers received by such Chapter 11 Professionals and not applied to the fees, disbursements, costs, and expenses set forth in clause (a)(i) above; and (ii) the fees set forth in clause (a)(ii) above. The Carve Out Cap shall be reduced on a dollar-for-dollar basis by any payments of fees or expenses of the Debtor Professionals or Committee Professionals, respectively, made after delivery of the Carve Out Trigger Notice in respect of fees and expenses incurred after delivery of the Carve Out Trigger Notice.

(c)      Carve Out Usage.  No portion of the Carve Out and no Prepetition Collateral (or proceeds thereof) may be used to pay any fees or expenses incurred by any entity, including the Debtor, any Committee, or the Debtor Professionals, in connection with (i) claims or causes of action adverse to the Prepetition Secured Lender's interest in the Prepetition Collateral, including (A) preventing, hindering, or delaying the Prepetition Secured Lender's enforcement or realization upon any of the Prepetition Collateral once a Carve Out Trigger Notice has been received, (B) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms

hereof, or selling any Prepetition Collateral without the consent of the Prepetition Secured Lender (unless sale(s) of Prepetition Collateral is less than $20,000 in the aggregate), or (C) objecting to or contesting in any manner, or in raising any defenses to, the validity, extent, amount, perfection, priority, or enforceability of the Prepetition Secured Debt or any liens or security interests with respect thereto or any other rights or interest of the Prepetition Secured Lender, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Prepetition Secured Lender (any such claim, a "Challenge"); *provided, however*, that up to $10,000 of the Carve Out may be used to pay fees and expenses incurred by the Committee Professionals in connection with the investigation of the Prepetition Credit Agreement and the liens on and security interests in the Prepetition Collateral; (ii) directly or indirectly, voluntarily purchasing, redeeming, defeasing, or prepaying any principal of, premium, if any, interest, or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than the Prepetition Secured Debt and obligations authorized under the Debtors' "first-day" orders; (iii) making any distribution under a plan of reorganization or liquidation in any of the Debtors' chapter 11 cases; (iv) making any payment in settlement of any claim, action, or proceeding, before any court, arbitrator, or other governmental body without the prior written consent of the Prepetition Secured Lender, unless otherwise ordered by this Court; (v) paying any fees or similar amounts to any person who has proposed or may propose to purchase interests in the Debtors without the prior written consent of the Prepetition Secured Lender; (vi) using or seeking to use any insurance proceeds constituting Prepetition Collateral or Adequate Protection Collateral without the consent of the Prepetition Secured Lender; (vii) incurring indebtedness outside the ordinary course of business without the prior consent of the Prepetition Secured Lender, except as permitted under the Prepetition Loan Documents; or (viii) financing in

14

any way any action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type (A) objecting to or challenging in any way the claims, liens, rights, or interests held by or on behalf of the Prepetition Secured Lender (whether held as of the Petition Date or before or after thereto) or the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Secured Debt, Prepetition Liens, Adequate Protection Liens or (B) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Prepetition Secured Lender (including of its participants, agents, employees, attorneys, or consultants), in each case except directly in connection with a Challenge otherwise explicitly permitted by this Paragraph 7(c) and Paragraph 8(c) of this Order.

(d)    Each of the provisions in this Paragraph 7, to the extent it allows for the use of Cash Collateral to make payment to Chapter 11 Professionals, shall expire upon the Termination Date, but the accrued and unpaid fees and amounts subject to the Carve Out shall be permitted to be paid from Cash Collateral, subject to the Carve Out Cap, to the extent approved by the Court and consistent with the Budget, and the Prepetition Secured Lender reserves the right to object to any provisions related to the payment of administrative expenses that may be sought for any period after the Termination Date.

8.    <u>General Relief</u>.

(a)    To the extent there exists any conflict among the Motion, the Prepetition Loan Documents, and the terms of this Order, this Order shall govern and control.

(b)    The automatic stay under section 362 of the Bankruptcy Code is hereby modified to the extent necessary to effectuate the provisions of this Order.

15

(c)    The Prepetition Secured Lender will not be deemed to have suspended or waived any of its rights or remedies under this Order, the Prepetition Loan Documents, the Bankruptcy Code, or applicable nonbankruptcy law unless such suspension or waiver is hereafter made in writing, signed by a duly authorized officer or agent of the Prepetition Secured Lender and directed to the Debtors.   No failure of the Prepetition Secured Lender to require strict performance by the Debtors (or by any Trustee (as defined below)) of any provision of this Order will waive, affect, or diminish any right of the Prepetition Secured Lender thereafter to demand strict compliance and performance therewith, and no delay on the part of the Prepetition Secured Lender in the exercise of any right or remedy under this Order, the Prepetition Loan Documents, or applicable nonbankruptcy law will preclude the exercise of any right or remedy.  Further, this Order does not constitute a waiver by the Prepetition Secured Lender of any of its respective rights under the Prepetition Loan Documents, the Bankruptcy Code, or applicable nonbankruptcy law, including, without limitation, the Prepetition Secured Lender's right to later assert (a) that any of its interests in the Prepetition Collateral lack adequate protection within the meaning of Bankruptcy Code sections 362(d) or 363(e) or any other provision thereof or (b) a claim under section 507(b) of the Bankruptcy Code.

(d)    As adequate protection and further consideration for permitting the use of Cash Collateral or in exercising any rights or remedies pursuant to this Order, the Prepetition Secured Lender shall not have any liability for any claims arising from the prepetition or postpetition activities of the Debtors or their affiliates.

(e)    This Order and the findings of fact set forth in Paragraphs A–L hereof is binding on all parties in interest in these chapter 11 cases and their respective successors and assigns, including, without limitation, any subsequently appointed chapter 11 or chapter 7 trustee

16

of a Grantor Debtor ("Trustee"), except that a party in interest (other than a Debtor, but including the Committee and a Trustee, if any) may commence a Challenge (i) no later than 60 days after formation of the Committee or (ii) in the case of any other party in interest other than the Committee, no later than 75 days after the entry of this Order ((x) and (y) together, the "Challenge Period") and, in either (i) or (ii), this Court rules in favor of the Challenge.  If this Order does not become a final nonappealable order or if any of the provisions of this Order are hereafter modified, amended, vacated, or stayed by any subsequent order of this Court or any other court, such termination or subsequent order shall not affect the priority, validity, enforceability, or effectiveness of any lien, security interest, or other benefit or claim authorized hereby with respect to Cash Collateral used prior to the effective date of such termination or subsequent order.  All such liens, security interests, claims, and other benefits will be governed in all respects by the original provisions of this Order.

(f)      If the Grantor Debtors, any Trustee, any examiner with enlarged powers, any responsible officer, or any other estate representative subsequently appointed in any of these chapter 11 cases or any Successor Case shall obtain credit or incur debt pursuant to section 364(d) of the Bankruptcy Code at any time prior to the repayment in full of the Prepetition Secured Debt, including subsequent to the confirmation of any plan or reorganization or liquidation with respect to any of the Grantor Debtors and their estates, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition Secured Lender until all Prepetition Secured Debt is irrevocably paid in full.

(g)      Except as otherwise explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

17

(h)     Upon entry of the Final Order, as a result of the Prepetition Secured Lender's agreement to consent to the use of Cash Collateral in accordance with the Budget and to subordinate the Adequate Protection Claims and the Adequate Protection Liens to the Carve Out, the Prepetition Secured Lender shall be deemed to have received a waiver of (a) the equitable doctrine of "marshaling" or any other similar doctrine with respect to the Adequate Protection Collateral, (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral, and (c) the provisions of section 506(c) of the Bankruptcy Code; and no costs or expenses of administration that have been or may be incurred in these chapter 11 cases at any time shall be charged against the Prepetition Secured Lender, the Prepetition Collateral (or proceeds thereof), or the Adequate Protection Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Prepetition Secured Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the Prepetition Secured Lender.

9.      The Motion is hereby set for a final hearing before this Court at __:__ _..m. (ET) on _____ __, 2019 (such date or such later date to which such hearing is adjourned or continued, the "Final Hearing"), at which time any party in interest may present any timely filed objections to the entry of a further order containing relief substantially similar to that contained in this Order, and potentially containing additional relief requested by, but not granted to, the Prepetition Secured Lender in this Order.  Notwithstanding the foregoing, the Prepetition Secured Lender may consent to an extension of the Debtor's continued use of Cash Collateral without the need for a further hearing.

10.     The Debtors shall promptly serve a notice of the entry of this Order and such Final Hearing, together with a copy of this Order, by regular mail upon (i) the Office of the United States Trustee, (ii) the creditors holding the 30 largest unsecured claims against the Debtor, (iii) counsel to the Prepetition Secured Lender, and (iv) any other party which has filed a request with this Court for notice in the Debtor's case and served such request upon the Debtor's counsel.  The notice of the Final Hearing shall state that objections to the entry of a further interim order on the Motion shall be in writing and shall be filed with the United States Bankruptcy Clerk for the District of Delaware, at 824 North Market Street, 3rd Floor, Wilmington, Delaware, 19801, no later than _____ __, 2019, which objections shall be served so that the same are received on or before 4:00 p.m. (ET) of such date by:  (a) proposed counsel to the Debtor, Bayard P.A., 600 North King Street, Ste. 400, Wilmington, DE 19801 (Attn: Erin R. Fay, Esq.), email: efay@bayardlaw.com; (c) counsel to the Prepetition Secured Lender, c/o Paul Hastings LLP, 71 South Wacker Drive, 45th Floor, Chicago, Illinois (Attn:  Matthew M. Murphy and Nathan S. Gimpel); (d) counsel for any official committee; and (e) the Office of the United States Trustee for the District of Delaware, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE, 19801 (Attn: Linda Richenderfer), email: linda.richenderfer@usdoj.gov.  Any objections by creditors or other parties in interest to any of the provisions of this Order shall be deemed waived unless filed and served in accordance with this paragraph.

11.     Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Order shall become valid and binding upon and inure to the benefit of the Debtors, the Prepetition Secured Lender, all other creditors of the Debtors, any Committee, or any other Court-appointed committee in these chapter 11 cases, and all other parties in interest and their respective successors and assigns, including any Trustee or

other fiduciary hereafter appointed in these chapter 11 cases, any Successor Case, or upon dismissal of any of these chapter 11 cases or any Successor Case.

12.     The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order that may be entered:  (a) confirming any plan of reorganization or liquidation in these chapter 11 cases; (b) converting any of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; (c) dismissing any of these chapter 11 cases or any Successor Case; or (d) pursuant to which the Court abstains from hearing these chapter 11 cases or any Successor Case.  The terms and provisions of this Order, including the claims, liens, security interests, and other protections granted to the Prepetition Secured Lender pursuant to this Order the Prepetition Loan Documents, notwithstanding the entry of any such order, shall continue in these chapter 11 cases, in any Successor Case, or following dismissal of any of these chapter 11 cases or any Successor Case, and shall maintain their priority as provided by this Order until all Prepetition Secured Debt has been paid in full.

13.     This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of effectiveness of this Order.


Dated: _____, 2019
        Wilmington, Delaware

_____
THE HONORABLE KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE

EXHIBIT 1　　Case 19-12330-KG　　Doc 12　　Filed 11/04/19　　Page 39 of 40

| | 11/3/19 | 11/10/19 | 11/17/19 | 11/24/19 | 12/1/19 | 12/8/19 | 12/15/19 | 12/22/19 | 12/29/19 | 1/5/20 | 1/12/20 | 1/19/20 | 1/26/20 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| High Country Jobs | 204,082 | 1,292,530 | 56,791 | 627,480 | 300,000 | 1,228,542 | 477,429 | 156,474 | 606,833 | 748,062 | 416,184 | - | 221,649 |
| Fleetwood Jobs | - | 35,297 | 78,138 | 186,853 | 358,233 | - | 176,648 | 41,969 | 1,633 | - | - | - | 510,536 |
| Revenue | 204,082 | 1,327,827 | 134,928 | 814,333 | 658,233 | 1,228,542 | 654,077 | 198,443 | 608,466 | 748,062 | 416,184 | - | 732,185 |
| | | | | | | | | | | | | | |
| HC Materials, Freight, and Installation | 84,302 | 212,283 | 145,479 | 321,847 | 43,468 | 265,000 | 805,423 | 341,209 | 65,123 | 26,910 | 339,500 | 520,985 | 467,400 |
| FW Materials, Freight, and Installation | 900 | 23,260 | 192,918 | 292,041 | 29,490 | 3,908 | - | - | - | - | - | - | - |
| Engineering Labor | 22,759 | | 22,759 | | 22,759 | | 22,759 | | 22,759 | | 22,759 | | 22,759 |
| Engineering Overtime | 6,134 | | - | | - | | - | | - | | - | | - |
| Production Labor | 69,546 | | 69,546 | | 69,546 | | 69,546 | | 69,546 | | 69,546 | | 69,546 |
| Production Labor Overtime | 34,755 | | 29,472 | | 16,465 | | 19,737 | | 3,830 | | 10,672 | | - |
| Costs of Good Sold | 218,395 | 235,543 | 460,174 | 613,888 | 181,728 | 268,908 | 917,464 | 341,209 | 161,256 | 26,910 | 442,476 | 520,985 | 559,704 |
| | | | | | | | | | | | | | |
| Gross Profit | (14,313) | 1,092,284 | (325,246) | 200,445 | 476,506 | 959,634 | (263,388) | (142,766) | 447,210 | 721,152 | (26,293) | (520,985) | 172,480 |
| | | | | | | | | | | | | | |
| Rent | - | - | - | 54,812 | 68,000 | - | - | - | 122,812 | - | - | - | 54,812 |
| Taxes (RE, Sales, PPT, etc) | | | | 83,910 | | | | | 83,910 | 65,840 | | | 83,910 |
| Insurance | 48,517 | | 220,000 | | 48,517 | | | | | 52,137 | | 50,000 | |
| Utilities | | 25,791 | 17,000 | | | 25,791 | | | | | 25,791 | | |
| Salaries | 83,535 | - | 83,535 | - | 83,535 | - | 85,593 | - | 85,593 | - | 85,593 | - | 85,593 |
| Commissions | 3,061 | 19,917 | 2,024 | 12,215 | 9,874 | 18,428 | 9,811 | 2,977 | 9,127 | 6,923 | 4,590 | - | 10,983 |
| T&E | | | 27,500 | | | | 27,500 | | | | 27,500 | - | |
| Repairs and Maintenance | | | 13,353 | | | | 13,353 | | | | 13,353 | | |
| Dues & Subscriptions | | | 2,137 | | | | 2,137 | | | | 2,137 | | |
| Information Technology | | | 11,333 | | | | 11,333 | | | | 11,333 | | |
| Postage | | | 615 | | | | 615 | | | | 615 | | |
| Records Retention | | | 1,250 | | | | 1,250 | | | | 1,250 | | |
| Supplies | | | 25,015 | | | | 25,015 | | | | 25,015 | | |
| Professional Fees | | | 9,293 | | | | 9,293 | | | | 9,293 | | |
| Bank Fees | | | 1,667 | | | | 1,667 | | | | 1,667 | | |
| Bad Dext Expense | | | | | | | | | | | | | |
| Operating Expenses | 135,114 | 45,708 | 414,723 | 150,937 | 209,926 | 44,219 | 187,569 | 2,977 | 301,442 | 124,899 | 208,138 | 50,000 | 235,298 |
| Operating Profit | (149,427) | 1,046,576 | (739,969) | 49,509 | 266,580 | 915,415 | (450,956) | (145,743) | 145,768 | 596,253 | (234,431) | (570,985) | (62,817) |
| | | | | | | | | | | | | | |
| Operating Profit | (149,427) | 1,046,576 | (739,969) | 49,509 | 266,580 | 915,415 | (450,956) | (145,743) | 145,768 | 596,253 | (234,431) | (570,985) | (62,817) |
| AR Collections from pre-petition jobs | 1,522,351 | 179,745 | 17,105 | 918,645 | - | - | 190,141 | - | 30,838 | - | - | - | - |
| Insurance/Bond Reimbursement | | | | | | | | | 105,000 | | | | 400,000 |
| Sale of PP&E and inventory | | | | | | | | | | | | | 700,000 |
| Operating Profit/(Loss) + Cash | 1,372,924 | 1,226,322 | (722,865) | 968,153 | 266,580 | 915,415 | (260,815) | (145,743) | 281,606 | 596,253 | (234,431) | (570,985) | 1,037,183 |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Accounting Fees | | | | $ 35,000 | | | | | | | | | |
| Bayard Legal Fees | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 | $ 50,000 |
| Committee Professionals | | | $ 18,200 | $ 18,200 | $ 18,200 | $ 18,200 | $ 18,200 | $ 18,200 | $ 18,200 | $ 18,200 | $ 18,200 | $ 18,200 | $ 18,200 |
| US Trustee Fees | | | | | | | | | | | | $ 78,779 | |
| Claims Agent | $ 7,700 | $ 7,700 | $ 7,700 | $ 7,700 | $ 7,700 | $ 7,700 | $ 7,700 | $ 7,700 | $ 7,700 | $ 7,700 | $ 7,700 | $ 7,700 | $ 7,700 |
| AP Critical Vendors | $ 320,009 | $ 320,009 | $ 320,009 | | $ 192,005 | $ 192,005 | $ 192,005 | $ 192,005 | $ 192,005 | | | | |
| 503(b)(9) Claims | | | | | | | | | | | | | $ 335,537 |
| Lenders Legal Fees | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 | $ 15,000 |
| Director Fees | $ 10,000 | | | | $ 10,000 | | | | | $ 10,000 | | | |
| FW Severance/Plant Shutdown | | | | | $ 200,000 | | | | | | | | |
| FW Inv & PP&E Disposal Expenses | | | | $ 15,000 | | $ 15,000 | | | | | | | |
| **Restructuring Outflows** | **$ 402,709** | **$ 392,709** | **$ 410,909** | **$ 140,900** | **$ 492,905** | **$ 297,905** | **$ 282,905** | **$ 282,905** | **$ 282,905** | **$ 100,900** | **$ 90,900** | **$ 169,679** | **$ 426,437** |
| **Net Cash Flow** | **$ 970,216** | **$ 833,613** | **$ (1,133,773)** | **$ 827,253** | **$ (226,325)** | **$ 617,510** | **$ (543,720)** | **$ (428,648)** | **$ (1,299)** | **$ 495,353** | **$ (325,331)** | **$ (740,664)** | **$ 610,746** |
| Beginning Cash | $ 335,010 | $ 1,305,226 | 2,138,839 | 1,005,066 | $ 1,832,319 | $ 1,605,994 | $ 2,223,503 | $ 1,679,783 | $ 1,251,135 | $ 1,249,836 | $ 1,745,189 | $ 1,419,858 | 679,194 |
| Change in Cash | $ 970,216 | $ 833,613 | (1,133,773) | 827,253 | (226,325) | 617,510 | (543,720) | (428,648) | (1,299) | 495,353 | (325,331) | (740,664) | 610,746 |
| **Ending Cash** | **$ 1,305,226** | **$ 2,138,839** | **$ 1,005,066** | **$ 1,832,319** | **$ 1,605,994** | **$ 2,223,503** | **$ 1,679,783** | **$ 1,251,135** | **$ 1,249,836** | **$ 1,745,189** | **$ 1,419,858** | **$ 679,194** | **$ 1,289,939** |