# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Fleetwood Acquisition Corp., et al. | Case No. 19-12330 |
| Debtors.[1] | **Re: Docket Nos. 12 & 27** |

## FINAL ORDER (I) AUTHORIZING USE OF CASH COLLATERAL, (II) GRANTING ADEQUATE PROTECTION, AND (III) GRANTING RELATED RELIEF

Upon consideration of the Motion,[2] the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") requesting this Court's authorization to use the cash collateral of Fixtures Holdings, L.P. (solely in its capacity as lender and administrative agent under the Prepetition Loan Documents, the "Prepetition Secured Lender")[3] and Brookside Mezzanine Fund III, L.P. (solely in its capacity as participant under the Prepetition Loan Documents, "Brookside," and together with the Prepetition Secured Lender, the "Prepetition Secured Parties"),[4] pursuant to section 105, 361, 362, 363(c)(2), and 507 of the Bankruptcy Code, Bankruptcy Rule 4001, and Local Rule 4001-2, pursuant to the budget attached to the Interim Order (defined below) as Exhibit 1 (as modified, and together with any subsequent budget, in each

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are as follows: Fleetwood Acquisition Corp. (3051), Fleetwood Industries, Inc. d/b/a Fleetwood Fixtures (7530), and High Country Millwork, Inc. (7294). The mailing address for the Debtors, solely for purposes of notices and communications, is: 4076 Specialty Place, Longmont, Colorado 80504.

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

[3] For the avoidance of doubt, for the purposes of this Order, the term Prepetition Secured Lender shall not include Fixtures Holdings, L.P. in its capacity as lender or successor in interest to that certain Amended and Restated Subordinated Promissory Note, dated as of May 30, 2017 (as amended, restated, or otherwise modified from time to time, the "Prepetition Promissory Note").

[4] For the avoidance of doubt, for the purposes of this Order, the term Prepetition Secured Parties shall not include Brookside Mezzanine Fund III, L.P. in its capacity as lender with respect to that certain Term Loan Agreement, dated as of September 19, 2014 (as amended, restated, or otherwise modified from time to time, the "Prepetition Mezzanine Loan").

case as approved by the Prepetition Secured Lender pursuant to Paragraph 3(a) of this Order, the "Budget"); and notice of the Motion being adequate and appropriate under the particular circumstances; and the Court having held a hearing on November 5, 2019, to consider approval of the Motion on an interim basis (the "Interim Hearing"); and the Court having entered that certain *Interim Order (I) Authorizing Use of Cash Collateral, (II) Granting Adequate Protection, and (III) Granting Related Relief* [D.I. 27] (the "Interim Order"); and ~~a hearing having been held to consider~~ **the Court having considered** the relief requested in the Motion on a final basis (the "Final Hearing"); and upon consideration of the First Day Declaration, the records of the Interim Hearing and the Final Hearing and all proceedings had before the Court; and the Court having found and determined that (a) the relief sought in the Motion is in the best interests of the Debtors' estates, its creditors, and other parties in interest and (b) the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and any objections to the requested relief having been withdrawn or overruled on the merits; and after due deliberation and sufficient cause appearing therefor,

**THE COURT HEREBY FINDS THAT:**

A.    On November 4, 2019 (the "Petition Date"), the Debtors filed voluntary petitions for relief under chapter 11 of the United States Bankruptcy Code. The Debtors are administering these chapter 11 cases as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

B.    The Court has jurisdiction over the Debtors' chapter 11 cases and this proceeding under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012. Determination of the Motion constitutes a core proceeding as defined in 28 U.S.C. § 157(b)(2), and the Court may

enter an order consistent with Article III of the United States Constitution. Venue over this Motion is proper under 28 U.S.C. §§ 1408 and 1409(a).

     C.     An official committee of unsecured creditors (the "Committee") was appointed on November 13, 2019. No chapter 11 trustee has been appointed in these chapter 11 cases.

     D.     At the Interim Hearing, the Court approved the Motion on an interim basis pursuant to the Interim Order.

     E.     The Debtors admit, stipulate, and agree that as of the Petition Date:

          i.     the Debtors are truly and justly indebted and liable to the Prepetition Secured Lender pursuant to that certain Revolving Credit and Term Loan Agreement, by and among the Prepetition Secured Lender and the Debtors, dated as of September 19, 2014 (as amended, restated, or otherwise modified from time to time, the "Prepetition Credit Agreement," and together with all other documentation executed in connection therewith, including, without limitation, the Prepetition Collateral Agreements and the Intercreditor Agreement (each as defined below), the "Prepetition Loan Documents");

          ii.     there is at least $51,259,427.04 in principal and interest outstanding (together with any unpaid principal, interest, fees, charges, expenses, and disbursements (including attorneys' fees and related expenses and disbursements) and other obligations owed to the Prepetition Secured Lender, whether contingent, whenever arising, accrued, accruing, due, owing, or chargeable, including all "Obligations" as defined and described in the Prepetition Credit Agreement, collectively, the "Prepetition Secured Debt") under the Prepetition Credit Agreement due and owing to the Prepetition Secured Lender;

          iii.     the Prepetition Secured Debt is secured with valid, binding, enforceable, non-avoidable, properly perfected, first-priority liens ("Prepetition Liens") on substantially all assets of Debtors Fleetwood Acquisition Corp. and High Country Millwork (together, the "Grantor Debtors") (such assets, collectively, the "Prepetition Collateral") pursuant to that certain Security Agreement, that certain Pledge Agreement, and that certain Patent, Trademark and Copyright Security Agreement, each by and among the Prepetition Secured Lender (as successor to Citizens Bank of Pennsylvania) and the Debtors, and each dated as of September 19, 2014 (as amended, restated, or otherwise modified from time to time, collectively, the "Prepetition Collateral Agreements"); *provided, however*, that the Debtors do not stipulate to any liens on the assets of Debtor Fleetwood Industries, Inc.;

iv.    the Prepetition Liens have priority over any and all other liens on the Prepetition Collateral, subject only to certain other liens otherwise explicitly permitted by the Prepetition Loan Documents (to the extent any such permitted liens were valid, binding, enforceable, properly perfected, non-avoidable, and senior in priority to the Prepetition Liens as of the Petition Date, the "<u>Prepetition Permitted Liens</u>"), and otherwise have priority over any and all other liens on the Prepetition Collateral;

v.    the senior priority of the Prepetition Secured Debt is dictated by that certain Intercreditor Agreement, by and among the Debtors, the Prepetition Secured Lender (as successor in interest to Citizens Bank of Pennsylvania), and Brookside Mezzanine Fund III, L.P. (solely in its capacity as lender and administrative agent under the Prepetition Mezzanine Loan, the "<u>Prepetition Mezzanine Lender</u>"), dated as of September 19, 2014 (as amended, restated, or otherwise modified from time to time, collectively, the "<u>Intercreditor Agreement</u>"), with respect to the priority of the Prepetition Secured Debt vis-à-vis the Debtors' mezzanine debt held by the Prepetition Mezzanine Lender; *provided, however*, that the Debtors do not stipulate to the validity, extent, amount, perfection, priority, or enforceability of the mezzanine debt held by the Prepetition Mezzanine Lender;

vi.    no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or the Prepetition Secured Debt exist, and no portion of the Prepetition Liens or the Prepetition Secured Debt is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise) pursuant to the Bankruptcy Code or applicable non-bankruptcy law;

vii.    the Debtors and their estates have no claims, objections, challenges, causes of action, or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against the Prepetition Secured Lender or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors, or employees arising out of, based upon, or related to the Prepetition Loan Documents;

viii.    all cash and cash equivalents of the Grantor Debtors constitute Prepetition Collateral or proceeds thereof and are "cash collateral" of the Prepetition Secured Lender within the meaning of section 363(a) of the Bankruptcy Code (the "<u>Cash Collateral</u>"); and

ix.    the Debtors are in default under the Prepetition Loan Documents, which default is continuing and is with respect to material obligations of the Debtors thereunder.

F.    Subject only to Paragraph 8(e) of this Order, the Debtors, on their own behalf and on behalf of their estates and any successors or assigns (including any chapter 7 or chapter 11

4

trustee or other representative appointed in any of these chapter 11 cases), hereby unconditionally, irrevocably, fully, and forever waive, release, and discharge the Prepetition Secured Lender, and all of its respective affiliates, and all of the directors, officers, employees, attorneys, representatives, agents, predecessors, successors, and assigns of the Prepetition Secured Lender and such affiliates (collectively, the "Released Parties") from any and all claims, counterclaims, defenses, setoff rights, demands, actions, or causes of action (whether known or unknown, asserted or unasserted, accrued or unaccrued, or fixed or contingent) arising out of or in any way relating to any of the Prepetition Loan Documents, the Prepetition Secured Debt, and the Prepetition Collateral to the extent arising on or prior to the date hereof, including, but not limited to, claims or challenges under section 105 or chapter 5 of the Bankruptcy Code or similar provisions of applicable state or federal law, any so-called "lender liability," recharacterization, subordination, avoidance, and any other claims or causes of action regarding the validity, priority, perfection, or avoidability of liens or claims of the Prepetition Secured Lender.[5]

G.    The Prepetition Secured Parties are entitled to adequate protection as set forth herein pursuant to sections 361 and 363 of the Bankruptcy Code for any decrease in the value of their interests in the Prepetition Collateral from and after the Petition Date.

H.    Subject to the terms and conditions set forth in this Order, the Prepetition Secured Parties agree to consent to the entry of this Order. No finding of fact contained in this Order shall or shall be construed to waive, impair, limit, or prejudice in any way the Prepetition Secured

---

[5]    For the avoidance of doubt, the stipulations contained in paragraph D and the waivers and releases in Paragraph E shall not apply to (a) Fixtures Holdings, L.P in its capacity as lender or successor in interest to the Prepetition Promissory Note; or (b) the Prepetition Mezzanine Lender in its capacity as lender with respect to the Prepetition Mezzanine Loan.

Parties' right to contest or object to any further or other use by the Debtors of the Cash Collateral or other assets of the Debtors.

      I.        The terms of this Order and the use of Cash Collateral have been negotiated extensively at arm's length and in good faith between the Debtors and the Prepetition Secured Parties.

      J.        Under the circumstances of this Case, this Order is a fair and reasonable response to Debtors' request for the Prepetition Secured Parties' consent to the use of Cash Collateral, and the entry of this Order is in the best interest of Debtors' estate and its creditors. The Debtors have a critical need to use the Cash Collateral on the terms set forth herein in order for the Debtors to continue their efforts to preserve and maximize value for their estates and creditors.

      K.        Unless the relief set forth in this Order is granted, the Debtors' estates and business will be irreparably harmed. In particular, the Debtors require use of the Cash Collateral to, among other things, pay basic expenses, such as payroll, professionals, and utilities. The use of the Cash Collateral, in accordance with this Order, is therefore in the best interest of the Debtors' estates, their creditors, and all parties in interest.

      L.        The notice provided by the Debtors of the Motion, the Interim Hearing and the Final Hearing on the Motion, and the entry of this Order satisfies the requirements of Bankruptcy Rules 2002, 4001(b) and (d), and 9014, Local Rule 9013-1(m), and sections 102(1) and 363 of the Bankruptcy Code and was otherwise sufficient and appropriate under the circumstances.

      M.        This Order constitutes findings of fact and conclusions of law under Bankruptcy Rule 7052 and will take effect and be fully enforceable as of the Petition Date.

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is hereby granted on a final basis, subject to the terms and conditions set forth in this Order.

2.      The Debtors are authorized to use Cash Collateral in accordance with the Budget, with a permitted variance described in Paragraph 3(a) of this Order, and otherwise pursuant to the terms and conditions of this Order, through the earlier to occur of such dates (the "Termination Date"): (a) the date that is five business days following receipt (via email, facsimile, or courier) by the Debtors, Debtors' counsel, the Office of the United States Trustee, and counsel to the Committee of a notice of the continuing occurrence of a "Termination Event" (as defined in Paragraph 6 of this Order) and that the Debtors' use of Cash Collateral shall terminate immediately pursuant to this Order, and such Termination Event remains uncured, or the Prepetition Secured Lender has not explicitly waived such Termination Event in writing; (b) January 31, 2020 (or such later date as agreed to in writing by the Prepetition Secured Lender); and (c) the effective date of a plan of reorganization or liquidation for the Debtors.  On the Termination Date, without further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 105 or 362 of the Bankruptcy Code or otherwise, the Prepetition Secured Lender may exercise any rights and remedies available to it under the Prepetition Loan Documents, this Order, or applicable law against the Prepetition Collateral, any other assets of the Debtors, and the Adequate Protection Collateral (as defined below), including entering onto the premises of the Debtors in connection with an orderly liquidation of such collateral and exercising any rights and remedies provided to the Prepetition Secured Lender under the Prepetition Loan Documents, or at law or equity, in each case only except as expressly prohibited by this Court; *provided, however,*

that (x) the obligations of the Debtors and the rights of the Prepetition Secured Lender with respect

to all transactions that have occurred prior to the Termination Date shall remain unimpaired and

unaffected and (y) the Debtors and the Prepetition Secured Lender shall retain all of their

respective rights and remedies under the Bankruptcy Code except as otherwise explicitly provided

in this Paragraph 2 or elsewhere in this Order.

3.      Subject to Paragraph 8(e) of this Order, as adequate protection for any use or

diminution in the value of the Prepetition Secured Parties' interest in the Prepetition Collateral

(including the Cash Collateral):

(a)      The Debtors (i) will comply with the Budget and shall not make any disbursements other than pursuant to the Budget, subject to a weekly variance not to exceed 15% of the budgeted amounts of total cash disbursements for such week by category (including, but not limited to, the payment of fees or reimbursement of expenses to Debtor professionals and Committee professionals) and in the aggregate; and (ii) will deliver to the Prepetition Secured Lender, on the first business day of each week, a weekly variance report setting forth Budget-to-actual comparisons for the immediately prior week. The Budget may be modified only with the prior written consent and approval of the Prepetition Secured Lender—in its sole discretion and without further order of the Court— or upon order of the Court as necessary. Each modified budget shall be filed with the Court. The Debtors shall comply with all reporting requirements set forth in the Prepetition Loan Documents and shall provide such other reports and information as the Prepetition Secured Lender may reasonably request.

(b)      Effective as of the Petition Date and in each case perfected without the necessity of any recordation or other filing, or the execution by the Debtors, of security agreements, control agreements, pledge agreements, financing statements, mortgages or other similar documents, or by possession or control, the Grantor Debtors hereby grant the following replacement and additional security interests and liens to the Prepetition Secured Lender, subject only to the Carve Out (as defined herein) (all such liens and security interests, the "Adequate Protection Liens"):

i.      **Liens Senior to Other Liens.**  A valid, binding, continuing, enforceable, fully perfected, first-priority senior priming security interest in, and lien on, the Prepetition Collateral and all other of the Grantor Debtors' now-owned and hereafter-acquired real and personal property, assets, and rights of any kind or nature, wherever located, including, without limitation, all prepetition and postpetition property of the Grantor Debtors' estates, and the proceeds, products, offspring, rents, and profits thereof, whether arising from section 552(b) of the

8

Bankruptcy Code or otherwise, and all claims or causes of action or the proceeds thereof to avoid a transfer of property (or an interest in property) or an obligation incurred by the Grantor Debtors pursuant to any applicable section of the Bankruptcy Code, including, without limitation, chapter 5 and section 724(a) of the Bankruptcy Code (collectively, the "Senior Adequate Protection Collateral"). The Adequate Protection Liens shall in all cases be senior to any other security interests or liens, subject only to the Carve Out and valid, perfected, and enforceable Prepetition Permitted Liens, if any, senior to the Prepetition Secured Lender's liens or security interests as of the Petition Date or to valid and unavoidable liens permitted under the Prepetition Loan Documents and in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

ii.    **Liens Junior to Existing Liens**.  A valid, binding, continuing, enforceable, fully perfected junior lien on and security interest in all prepetition and postpetition property of the Grantor Debtors (other than the property described in clause (i) of this Paragraph 3(b)) (the "Junior Adequate Protection Collateral," and together with the Senior Adequate Protection Collateral, the "Adequate Protection Collateral"), whether now existing or hereafter acquired, subject to valid, perfected, and unavoidable Prepetition Permitted Liens, if any, senior to the Prepetition Secured Parties' liens and security interests as of the Petition Date or valid and unavoidable liens permitted under the Prepetition Loan Documents and in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(c)    Other than as set forth in this Order, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in any of the Grantor Debtors' chapter 11 cases or any case of a Grantor Debtor under chapter 7 of the Bankruptcy Code upon the conversion of such Grantor Debtor's chapter 11 case (each, a "Successor Case"). The Adequate Protection Liens shall be subject to Challenge (as defined herein) by the Committee in accordance with the terms of Paragraph 8(e) of this Order. The Adequate Protection Liens shall be valid and enforceable against any trustee or other estate representative appointed in any of these chapter 11 cases or any Successor Case, upon the conversion of a Grantor Debtors' chapter 11 case to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon dismissal of any of the Grantor Debtors' chapter 11 cases or any Successor Case.

(d)    The Grantor Debtors hereby grant to the Prepetition Secured Lender, an allowed superpriority administrative-expense claim against each of the Grantor Debtors on a joint and several basis with priority over any and all other administrative-expense claims against the Grantor Debtors now existing or hereafter arising in these chapter 11 cases or any Successor Case (subject only to the Carve Out (as defined below)), including all claims of the kind specified under sections 503(b) and 507(b) of the Bankruptcy Code (the "Adequate Protection Claims"), to the extent that other adequate protection granted to the Prepetition Secured Lender does not adequately protect against any diminution of value of the Prepetition Secured Lender's interest in the Prepetition Collateral; and such

administrative-expense claim shall have recourse to and be payable from all prepetition and postpetition property of the Grantor Debtors including, without limitation, the proceeds or property recovered in respect of any avoidance actions.

(e)    The Debtors shall maintain their cash-management arrangements in a manner consistent with the final order granting the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing Continued Use of Cash Management System, (II) Authorizing Continued Use of Existing Business Forms, (III) Authorizing the Continuation of Intercompany Transactions, (IV) Granting Administrative Priority Status to Post-Petition Intercompany Transactions, (V) Authorizing Use of Prepetition Bank Accounts and Certain Payment Methods, and (VI) Temporarily Suspending the Requirements of 11 U.S.C. § 345(b)* (the "Cash Management Motion"), entered or to be entered substantially contemporaneously herewith. The Debtors shall not use, sell, or lease outside the ordinary course of business, or grant a lien on, any of their assets outside the ordinary course of business, or seek authority of this Court to do any of the foregoing, except as permitted by this Order, the Interim Order, or any of the Debtors' "first-day" or "second-day" orders, without the prior written consent of the Prepetition Secured Lender. The Debtors shall comply with the covenants contained in the Prepetition Loan Documents regarding the maintenance and insurance of the Prepetition Collateral. The Debtors shall provide draft copies of all motions, applications, and other documents material to the Prepetition Secured Lender or its rights or interests, the Prepetition Collateral, or the Adequate Protection Collateral that any Debtor intends to file with the Court to the Prepetition Secured Lender's counsel at least two business days before the date when the applicable Debtor intends to file such motion, application, or other documents.

(f)    The Debtors shall also pay indefeasibly in cash the following:  (i) as soon as is reasonably practicable, the reasonable professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and other consultants, including financial consultants and auditors) incurred by the Prepetition Secured Parties pursuant to the Prepetition Loan Documents arising prior to the Petition Date; and (ii) the reasonable and documented professional fees, expenses, and disbursements (including, but not limited to, the fees, expenses, and disbursements of counsel and other advisors) incurred by the Prepetition Secured Parties under the Prepetition Loan Documents arising subsequent to the Petition Date; *provided* that the payment of such fees, expenses, and disbursements (including, without limitation, professional fees and expenses of Paul Hastings LLP and any other professionals or advisors retained by or on behalf of the Prepetition Secured Parties) shall be made on, or as soon as reasonably practicable after, the date that is ten business days after the receipt by the Debtors, the United States Trustee, and the Committee (the "Review Period") of invoices thereof (the "Invoiced Fees") (subject in all respects to applicable privilege or work-product doctrines) and without the necessity of filing formal fee applications; *provided, however*, that the Debtors, the United States Trustee, and the Committee may dispute the payment of any portion of the Invoiced Fees (the "Disputed Invoiced Fees") if, within the Review Period, the Debtors, the United States Trustee, or the Committee file with the Court a motion or other pleading (a "Disputed Fees Motion"), on at least five days' prior written notice to the Prepetition Secured Parties of any hearing on the Disputed Fees

10

Motion, setting forth in detail the specific objections to the Disputed Invoiced Fees. In the event the U.S. Trustee, the Committee, or the Debtors file a Disputed Fees Motion, the applicable Disputed Invoiced Fees shall not be paid until resolution of such objection by this Court; *provided, however*, that in the event such resolution does not occur before the date that is 30 days after the filing of any such Disputed Invoice Motion, the Debtors shall pay in full the Disputed Invoiced Fees as soon as is reasonably practicable, with the objecting parties' rights to object to such Disputed Invoiced Fees preserved pending resolution of such objection. If no Disputed Fees Motion is filed during the Review Period, the Debtors shall pay the applicable Invoiced Fees without the need for any formal application and without further order of the Court within three business days following the expiration of the Review Period and shall not be subject to any further review or challenge. Claims against the Debtors arising from any nonpayment of amounts required to be paid under this Paragraph 3(f) shall constitute Adequate Protection Claims. Notwithstanding the foregoing, the Committee reserves the right to assert that, to the extent that any cash payment of interest, fees, and expenses as adequate protection to the Prepetition Secured Parties under this section is not allowed under section 506(b) of the Bankruptcy Code and not allowed on any other basis, such payments may be recharacterized and applied as payments of principal owed under the Prepetition Loan Documents.

4.      The Prepetition Secured Parties reserve the right to file with the Court a motion to seek additional adequate protection of its interests in any Debtor assets.

5.      In connection with the sale or other disposition, whether under Bankruptcy Code section 363 or section 1129 or otherwise, of all or any portion of the Prepetition Collateral or Adequate Protection Collateral in which the Prepetition Secured Lender has an interest, pursuant to section 363(k) of the Bankruptcy Code, the Prepetition Secured Lender shall have the right to use the Prepetition Secured Debt or any part thereof to credit bid with respect to any bulk or piecemeal sale of all or any portion of the Prepetition Collateral.

6.      For purposes of this Order, a "Termination Event" shall mean:

(a)      the entry by this Court of an order granting relief from the automatic stay imposed by section 362 of the Bankruptcy Code to any entity other than the Prepetition Secured Parties with respect to the Prepetition Collateral having a value of more than $20,000 in the aggregate without the prior written consent of the Prepetition Secured Lender, which consent shall not be unreasonably withheld;

(b)      the filing of any motion or pleading by the Debtors: (i) to obtain financing under section 364(c) or (d) of the Bankruptcy Code; (ii) to grant any lien other than as permitted under the Prepetition Loan Documents upon or affecting any Prepetition Collateral or Adequate

11

Protection Collateral; (iii) except as explicitly provided herein, to use Cash Collateral under section 363(c) of the Bankruptcy Code without the prior written consent of the Prepetition Secured Lender; (iv) that seeks to prohibit the Prepetition Secured Lender from credit bidding on any or all of the Debtors' assets during the pendency of these chapter 11 cases; or (v) requesting any relief materially adverse to the Prepetition Secured Lender or its rights and remedies hereunder or its interest in any Prepetition Collateral or Adequate Protection Collateral;

(c)     the (i) filing of any plan of reorganization or liquidation or disclosure statement attendant thereto, or any direct or indirect amendment to such plan or disclosure statement, to which the Prepetition Secured Lender does not consent or otherwise agree, in its sole discretion, to the treatment of its claims and that does not contain a provision for irrevocable repayment in full in cash of all of the Prepetition Secured Debt, (ii) entry of any order terminating the Debtors' exclusive right to file a plan of reorganization or liquidation, or (iii) expiration of the Debtors' exclusive right to file a plan of reorganization or liquidation;

(d)     the entry of an order in any of these chapter 11 cases confirming a plan of reorganization or liquidation that (i) is not acceptable to the Prepetition Secured Lender in its sole discretion or (ii) does not contain a provision for irrevocable repayment in full in cash of all of the Prepetition Secured Debt on or before the effective date of such plan;

(e)     the allowance of any claim or claims under section 506(c) of the Bankruptcy Code or otherwise against the Prepetition Secured Lender or any of the Prepetition Collateral or Adequate Protection Collateral;

(f)     the failure by the Debtors to make any payment required pursuant to this Order when due;

(g)     (i) the failure by the Debtors to deliver to the Prepetition Secured Lender any of the documents or other information required to be delivered pursuant to this Order when due or (ii) any such documents or other information contains a material misrepresentation;

(h)     the failure by the Debtors to adhere to the Budget except, in each instance, with respect to variances permitted pursuant to Paragraph 3(a) of this Order, in each case without the written consent of the Prepetition Secured Lender;

(i)     the filing by any Debtor, or any other party except as explicitly permitted pursuant to Paragraph 8(e) of this Order, of any motion, pleading, application, or adversary proceeding challenging the validity, enforceability, perfection, or priority of the liens securing the Prepetition Secured Debt or asserting any other cause of action against and/or with respect to the Prepetition Secured Debt, the Prepetition Collateral securing the Prepetition Secured Debt, or the Prepetition Secured Lender, including payments made on account of the Prepetition Secured Debt (or if the Debtors support any such motion, pleading, application, or adversary proceeding commenced by any third party);

(j)     the entry of an order, or filing of a motion by any of the Debtors seeking entry of an order, reversing, staying, vacating or otherwise modifying in any material respect the terms of this Order, any Prepetition Loan Documents, or any order approving the relief requested

12

in the Cash Management Motion, in each case without the written consent of the Prepetition Secured Lender;

(k)    the entry of an order avoiding, disgorging, or requiring repayment of any portion of payments made by the Debtors to the Prepetition Secured Parties pursuant to this Order or otherwise;

(l)    the entry of an order in any of these chapter 11 cases granting any other superpriority administrative claim or lien equal or superior to that of the Prepetition Secured Parties without the prior written consent of the Prepetition Secured Lender;

(m)    the violation by any Debtor of the terms of this Order;

(n)    any material damage to or loss of the Debtors' assets or any disruption of material business of the Debtors;

(o)    the entry of an order, or filing of a motion by any of the Debtors seeking entry of an order, converting any of the Debtors' chapter 11 cases to a case under chapter 7 of the Bankruptcy Code or terminating the authority of any Debtor to operate its business; or

(p)    the appointment of a trustee or examiner in any of the Debtors' chapter 11 cases.

7.    Carve Out.

(a)    Notwithstanding anything to the contrary, the liens on the Prepetition Collateral will be subject to the right of payment of the following expenses (collectively, the "Carve Out"):

> i.    to the extent allowed at any time by the Court, but subject in all respects to the aggregate amounts set forth in the current Budget[6] attached to the Interim Order, all accrued and unpaid fees, disbursements, costs, and expenses incurred by professionals or professional firms retained by the Debtor (the "Debtor Professionals") or retained by the Committee (the "Committee Professionals," and together with the Debtor Professionals, collectively, the "Chapter 11 Professionals"), through the date of service by the Prepetition Secured Lender, of a written notice delivered by the Prepetition Secured Lender to the Debtor, its counsel, the United States Trustee, and lead counsel to the Committee, which notice may be delivered at any time following the occurrence of any Termination Event (the "Carve Out Trigger Notice"), up to the date of service of the Carve Out Trigger

---

[6]    For the avoidance of doubt, to the extent the budgeted amounts for the Chapter 11 Professionals for any Budget period exceed the actual fees and expenses incurred by such Chapter 11 Professionals, the excess may be carried forward to a later Budget period or backwards to prior Budget periods to be applied to any fees or expenses that exceeded such budgeted amounts for such prior or later periods.

Notice and as limited by the amounts for each Chapter 11 Professional as set forth in the Budget, *less* the amount of prepetition retainers received by such Chapter 11 Professionals and not previously applied to fees and expenses (the "Pre-Trigger-Notice Accrued Fees"); and

      ii.    all fees required to be paid to the Clerk of the Court and to the Office of the United States Trustee under section 1930(a) of title 28 of the United States Code, plus interest at the statutory rate.

    (b)    Carve Out Terms. The Carve Out shall not exceed, in an aggregate amount: (i) for the Debtor and Committee Professionals, (A) their respective Pre-Trigger-Notice Accrued Fees and (B) $70,000.00 for fees and expenses accruing after service of the Carve Out Trigger Notice (the "Carve Out Cap") less the amount of prepetition retainers received by such Chapter 11 Professionals and not applied to the fees, disbursements, costs, and expenses set forth in clause (a)(i) above; and (ii) the fees set forth in clause (a)(i) above. The Carve Out Cap shall be reduced on a dollar-for-dollar basis by any payments of fees or expenses of the Debtor Professionals or Committee Professionals, respectively, made after delivery of the Carve Out Trigger Notice in respect of fees and expenses incurred after delivery of the Carve Out Trigger Notice.

    (c)    Carve Out Usage. No portion of the Carve Out and no Prepetition Collateral (or proceeds thereof) may be used to pay any fees or expenses incurred by any entity, including the Debtor, the Committee, or the Debtor Professionals, in connection with (i) claims or causes of action adverse to the Prepetition Secured Lender's interest in the Prepetition Collateral, including without limitation (A) preventing, hindering, or delaying the Prepetition Secured Lender's enforcement or realization upon any of the Prepetition Collateral once a Carve Out Trigger Notice has been received, (B) using or seeking to use Cash Collateral or incurring indebtedness in violation of the terms hereof, or selling any Prepetition Collateral without the consent of the Prepetition Secured Lender (unless sale(s) of Prepetition Collateral is less than $20,000 in the aggregate), or (C) objecting to or contesting in any manner, or in raising any defenses to, the

14

validity, extent, amount, perfection, priority, or enforceability of the Prepetition Secured Debt or any liens or security interests with respect thereto or any other rights or interest of the Prepetition Secured Parties, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against any of the Prepetition Secured Parties (any such claim, a "Challenge"); *provided, however*, that up to $25,000 of the Carve Out may be used to pay fees and expenses incurred by the Committee Professionals in connection with the investigation of the Prepetition Credit Agreement and the liens on and security interests in the Prepetition Collateral; (ii) directly or indirectly, voluntarily purchasing, redeeming, defeasing, or prepaying any principal of, premium, if any, interest, or other amount payable in respect of any indebtedness prior to its scheduled maturity, other than the Prepetition Secured Debt and obligations authorized under the Debtors' "first-day" or "second-day" orders; (iii) making any distribution under a plan of reorganization or liquidation in any of the Debtors' chapter 11 cases; *provided* that nothing in this clause (iii) shall modify the requirements of section 1129 of the Bankruptcy Code; (iv) making any payment in settlement of any claim, action, or proceeding, before any court, arbitrator, or other governmental body without the prior written consent of the Prepetition Secured Lender, unless otherwise ordered by this Court; (v) paying any fees or similar amounts to any person who has proposed or may propose to purchase interests in the Debtors without the prior written consent of the Prepetition Secured Lender; (vi) using or seeking to use any insurance proceeds constituting Prepetition Collateral or Adequate Protection Collateral without the consent of the Prepetition Secured Lender; (vii) incurring indebtedness outside the ordinary course of business without the prior consent of the Prepetition Secured Lender, except as permitted under the Prepetition Loan Documents; or (viii) financing in any way any action, suit, arbitration, proceeding, application, motion, objection, defense, or other litigation of any type (A)

15

objecting to or challenging in any way the claims, liens, rights, or interests held by or on behalf of the Prepetition Secured Parties (whether held as of the Petition Date or before or after thereto) or the validity, extent, amount, perfection, priority, or enforceability of any of the Prepetition Secured Debt, Prepetition Liens, Adequate Protection Liens or (B) asserting, commencing, or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against the Prepetition Secured Parties (including of its participants, agents, employees, attorneys, or consultants), in each case except directly in connection with a Challenge otherwise explicitly permitted by this Paragraph 7(c) and Paragraph 8(c) of this Order.

(d)     Each of the provisions in this Paragraph 7, to the extent it allows for the use of Cash Collateral to make payment to Chapter 11 Professionals, shall expire upon the Termination Date, but the accrued and unpaid fees and amounts subject to the Carve Out shall be permitted to be paid from Cash Collateral, subject to the Carve Out Cap, to the extent approved by the Court and consistent with the Budget, and the Prepetition Secured Parties reserve the right to object to any provisions related to the payment of administrative expenses that may be sought for any period after the Termination Date.

8.    General Relief.

(a)     To the extent there exists any conflict among the Motion, the Prepetition Loan Documents, the Interim Order, and the terms of this Order, this Order shall govern and control.

(b)     The automatic stay under section 362 of the Bankruptcy Code is hereby modified to the extent necessary to effectuate the provisions of this Order.

(c)     The Prepetition Secured Lender will not be deemed to have suspended or waived any of its rights or remedies under this Order, the Prepetition Loan Documents, the Bankruptcy Code, or applicable nonbankruptcy law unless such suspension or waiver is hereafter made in writing, signed by a duly authorized officer or agent of the Prepetition Secured Lender and directed to the Debtors.  No failure of the Prepetition Secured Lender to require strict performance by the Debtors (or by any Trustee (as defined below)) of any provision of this Order will waive, affect, or diminish any right of the Prepetition Secured Lender thereafter to demand strict compliance and performance therewith, and no delay on the part of the Prepetition Secured Lender in the exercise of any right or remedy under this Order, the Prepetition Loan Documents, or applicable nonbankruptcy law will preclude the exercise of any right or remedy.  Further, this Order does not constitute a waiver by the Prepetition Secured Lender or any of its rights under the Prepetition Loan Documents, the Bankruptcy Code, or applicable nonbankruptcy law, including, without limitation, the Prepetition Secured Parties' right to later assert (a) that any of their interests in the Prepetition Collateral lack adequate protection within the meaning of Bankruptcy Code sections 362(d) or 363(e) or any other provision thereof or (b) a claim under section 507(b) of the Bankruptcy Code.

(d)     Subject to Paragraph 8(e) of this Order, as adequate protection and further consideration for permitting the use of Cash Collateral or in exercising any rights or remedies pursuant to this Order, the Prepetition Secured Lender shall not have any liability for any claims arising from the prepetition or postpetition activities of the Debtors or their affiliates.

(e)     This Order and the findings of fact set forth in Paragraphs A–M hereof is binding on all parties in interest in these chapter 11 cases and their respective successors and assigns, including, without limitation, any subsequently appointed chapter 11 or chapter 7 trustee

17

of a Grantor Debtor ("Trustee"), except that a party in interest (other than a Debtor, but including the Committee and a Trustee, if any) may commence a Challenge (i) no later than 60 days after formation of the Committee or (ii) in the case of any other party in interest other than the Committee, no later than 75 days after the entry of the Interim Order ((x) and (y) together, the "Challenge Period") and, in either (i) or (ii), this Court rules in favor of the Challenge.  If this Order does not become a final nonappealable order or if any of the provisions of this Order are hereafter modified, amended, vacated, or stayed by any subsequent order of this Court or any other court, such termination or subsequent order shall not affect the priority, validity, enforceability, or effectiveness of any lien, security interest, or other benefit or claim authorized hereby with respect to Cash Collateral used prior to the effective date of such termination or subsequent order.  All such liens, security interests, claims, and other benefits will be governed in all respects by the original provisions of this Order.

(f)    If the Grantor Debtors, any Trustee, any examiner with enlarged powers, any responsible officer, or any other estate representative subsequently appointed in any of these chapter 11 cases or any Successor Case shall obtain credit or incur debt pursuant to section 364(d) of the Bankruptcy Code at any time prior to the repayment in full of the Prepetition Secured Debt, including subsequent to the confirmation of any plan or reorganization or liquidation with respect to any of the Grantor Debtors and their estates, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the Prepetition Secured Lender until all Prepetition Secured Debt is irrevocably paid in full.

(g)    Except as otherwise explicitly provided for herein, this Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

18

(h)     Upon entry of this Order, as a result of the Prepetition Secured Parties' agreement to consent to the use of Cash Collateral in accordance with the Budget and to subordinate the Adequate Protection Claims and the Adequate Protection Liens to the Carve Out, the Prepetition Secured Lender shall be deemed to have received a waiver of (a) the equitable doctrine of "marshaling" or any other similar doctrine with respect to the Adequate Protection Collateral, (b) any "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to proceeds, products, offspring, or profits of any of the Prepetition Collateral, and (c) the provisions of section 506(c) of the Bankruptcy Code; and no costs or expenses of administration that have been or may be incurred in these chapter 11 cases at any time shall be charged against the Prepetition Secured Lender, the Prepetition Collateral (or proceeds thereof), or the Adequate Protection Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the Prepetition Secured Lender, and no such consent shall be implied from any other action, inaction, or acquiescence by the Prepetition Secured Lender.

9.     Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Order shall become valid and binding upon and inure to the benefit of the Debtors, the Prepetition Secured Parties, all other creditors of the Debtors, the Committee, or any other Court-appointed committee in these chapter 11 cases, and all other parties in interest and their respective successors and assigns, including any Trustee or other fiduciary hereafter appointed in these chapter 11 cases, any Successor Case, or upon dismissal of any of these chapter 11 cases or any Successor Case.

10.     The provisions of this Order and any actions taken pursuant hereto shall survive entry of any order that may be entered: (a) confirming any plan of reorganization or liquidation in

these chapter 11 cases; (b) converting any of these chapter 11 cases to cases under chapter 7 of the Bankruptcy Code; (c) dismissing any of these chapter 11 cases or any Successor Case; or (d) pursuant to which the Court abstains from hearing these chapter 11 cases or any Successor Case. The terms and provisions of this Order, including the claims, liens, security interests, and other protections granted to the Prepetition Secured Parties pursuant to this Order or the Prepetition Loan Documents, notwithstanding the entry of any such order, shall continue in these chapter 11 cases, in any Successor Case, or following dismissal of any of these chapter 11 cases or any Successor Case, and shall maintain their priority as provided by this Order until all Prepetition Secured Debt has been paid in full.

11.     This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon entry hereof, and there shall be no stay of effectiveness of this Order.

November 26, 2019

Kevin Gross
Kevin Gross, U.S.B.J.